## STEVENS v. STATE

[No. 263, September Term, 1962.]

34

*Decided June 17, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Norman F. Summers,* for appellant.

*Robert S. Bourbon, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell* and *Julius A. Romano, State's Attorney* and *Assistant State's Attorney,* respectively, for Baltimore City, on the brief, for appellee.

SYBERT, J., delivered the opinion of the Court.

In a non-jury trial in the Criminal Court of Baltimore the appellant was found guilty of first degree murder and robbery under two indictments, and not guilty of burglary under a third. After a motion for a new trial was denied, he was sentenced to life imprisonment in the Penitentiary on the murder conviction and to ten years in the same prison on the robbery conviction, the terms to run concurrently. He has appealed in both cases.

The record shows that early on the morning of August 11, 1961 Ida Helen Baker, 64, was found brutally beaten and trussed up in a bedroom of her home. She died later the same day. Certain items were missing from the home. Arrested in connection with the case were the appellant, then 19 years of age, and three others. Each was tried separately for murder, robbery and burglary.

At appellant's trial the following evidence was before the court. An assistant Medical Examiner testified that Mrs. Baker had suffered multiple cuts and contusions, a broken nose, 15 fractured ribs, a fractured sternum, a tear in the back portion of the vagina, and a fractured vertebra, the last of

which he believed to have been the major cause of her death—which occurred at about 4:10 A.M. Herbert Barthlow testified that he and other City firefighters arrived at the home at about 12:55 A.M., gaining entrance through a second floor window. After extinguishing a fire in the middle bedroom on the first floor, he went to the rear bedroom from which he had heard moaning sounds, whereupon he found Mrs. Baker, tied up and badly beaten, but conscious. Over objection, Barthlow was permitted to testify that Mrs. Baker told him she had been beaten by two white men, who started a fire in the bed and on a chair and tied her up. When asked how soon Mrs. Baker had made the statement after he found her, Barthlow replied: "Well she proceeded to come right out and just start, you know, like just telling me right away as soon as I found her. She just started, I mean I didn't ask her what happened, she just volunteered, just told me."

Other witnesses produced by the State included Thomas G. Whitaker, appellant's brother-in-law, who testified that he had overheard a conversation, in the living room of his home a block from where Mrs. Baker lived, between the appellant and the other three defendants on the afternoon of August 10, 1961 about a robbery they intended to commit that evening; and William H. Baker, the son of the deceased, who testified as to items missing from the home, and that Harvey Damron, who was arrested at the same time as the appellant, had previously done repair work in his mother's house a number of times.

Police Sergeant Cadden testified as to a written statement made by the appellant after his arrest on the evening of August 11, 1961. After the sergeant stated that the statement was voluntarily given, and not induced by violence, threats or promises, it was introduced in evidence. In substance, appellant confessed that on the afternoon of August 10, 1961, in Whitaker's home, he, Harvey Damron, Ronald Giles and Roy Cantler had made a detailed plan to rob Mrs. Baker and divide the proceeds. He stated that shortly after 8:45 P.M. on the same evening he and Damron gained entrance to Mrs. Baker's house on the pretext that Damron had come to make

certain repairs in the bathroom, already ordered by Mrs. Baker. While Mrs. Baker showed Damron what to do, appellant remained in the hallway, where he opened the front door for the other two confederates, Giles and Cantler. These two hid in the house until after appellant and Damron left it, which apparently occurred at approximately 9:15 P.M. The confession recites that at a meeting of the four at about 1:30 o'clock the next morning, Cantler told appellant and Damron that he had beaten Mrs. Baker "bad", and tied her up, and that he and Giles had found only four dollars and some change in the house. Appellant stated that he had no knowledge of Mrs. Baker's death until he read of it in a newspaper later that morning. The record indicates that Mrs. Baker was beaten at about 10:30 P.M.

At the conclusion of the State's case, appellant's counsel moved for a directed verdict on each of the charges, which motions were denied. Appellant then took the stand in his own defense, his testimony being substantially the same as the statements in his confession. At the close of the case counsel moved again for directed verdicts and again the motions were denied. On this appeal the appellant raises eight points which we shall discuss in order.

## (1)

Appellant's first claim is that the trial court erred in admitting his confession in evidence. He says that no formal charges were placed against him when he was arrested, and that while he was in custody he was not allowed to see his parents, nor was he permitted the benefit of legal counsel. He states that his confession was made only after he was confronted by his brother-in-law, who was brought into the room where he was being interrogated by the police, and that it was made primarily to clear his brother-in-law from any implication in the crime. The complete answer to this contention is that appellant waived any objection he might have had to the admissibility of his confession. When the State offered the confession, appellant's counsel stated that "* * * I have not interposed any objection to the admissibility of the statement because the defendant told me it was voluntarily

obtained without any threats or promises nor with any hope of reward and under those circumstances it's definitely admissible in evidence." These statements, similar to the ones made by counsel for the accused in the recent case of *Martelly v. State*, 230 Md. 341, 345, 187 A. 2d 105 (1963), when the State sought to introduce certain evidence which was, on appeal, alleged to have been illegally seized, amounted to a specific waiver of any objection to the admissibility of the confession. Cf. *Prescoe v. State*, 231 Md. 486, 191 A. 2d 226 (1963). Furthermore, appellant's testimony at the trial that the statements in his confession were "true and voluntary" and the fact that he went on to reiterate them on the stand, clearly preclude his claiming on this appeal, for the first time, that they were not voluntarily given. Maryland Rule 885; *Jones v. State*, 229 Md. 165, 182 A. 2d 784 (1962).

(2)

Appellant contends that the murder indictment was defective because it charged him as a principal in the first degree although he did not participate directly in the killing. However, appellant made no objection to the form of the indictment below, in accordance with Rule 725 b, and therefore any alleged infirmity has been waived and cannot now be examined. *Kellum v. State*, 223 Md. 80 (fn. 1), 162 A. 2d 473 (1960); *Schanker v. State*, 208 Md. 15, 116 A. 2d 363 (1955). Moreover, had the indictment been insufficient to inform him of the charge against him he could have demanded a bill of particulars, which he did not do. Cf. *Seidman v. State*, 230 Md. 305, 187 A. 2d 109 (1962); *Pearlman v. State*, 232 Md. 251, 192 A. 2d 767 (1963). (It may be noted that had appellant properly reserved the point raised under this heading, much of the discussion of the question raised under heading (5) herein would be apropos here.)

(3)

As his third assignment of error appellant cites the failure of the record to show affirmatively that he was advised by the court of his right to refuse to testify against himself by declining to take the stand. We find no merit in this point. Ap-

pellant cites a passage in *Cox v. State,* 192 Md. 525, 534, 64 A. 2d 732 (1949), which referred to the Canadian case of *Rex v. Lantin,* 80 Can. C. C. 375 (1943). Both of these cases dealt with extra-judicial statements by an accused and we do not find them in point. Of course, a defendant has the right, under Article 22 of the Maryland Declaration of Rights and under Code (1957), Art. 35, Sec. 4, to refuse to give evidence against himself. Most jurisdictions which have considered the point have held that failure by a trial court to advise a defendant not represented by counsel of his right to refuse to take the witness stand constitutes prejudicial error. See cases collected in Anno., 79 A.L.R. 2d 643 (1961). However, we do not deem it essential for the protection of a defendant's constitutional rights that he be advised by the court of his right against self-incrimination when he is represented by counsel. In *Woodell v. State,* 223 Md. 89, 95, 162 A. 2d 468 (1960), we recognized the fact that attorneys, whether employed by the accused or court appointed, are officers of the court and are presumed to do as the law and their duty require them. Where the accused has counsel, it is to be presumed that the accused has been informed of his rights and that when he voluntarily takes the stand he waives the protection of the constitutional and statutory provisions. See *Barber v. State,* 191 Md. 555, 566, 62 A. 2d 616 (1948) ; *Allen v. State,* 183 Md. 603, 39 A. 2d 820 (1944) ; *Guy v. State,* 90 Md. 29, 44 Atl. 997 (1899). Cf. *Gamble v. State,* 164 Md. 50, 52, 163 Atl. 859 (1933) ; *Adams, Nelson, and Timanus v. State,* 200 Md. 133, 143, 88 A. 2d 556 (1952). Here, the appellant was called to the stand by his counsel and in such a case there is no requirement that the court advise him of his right to refuse to testify. 3 *Wharton's Criminal Evidence* (12th ed.), Sec. 722, citing *State v. Kelley,* 247 Pac. 146 (Ore. 1926), writ of error dism. 273 U. S. 589, 47 S. Ct. 504 (1927) ; Cf. *Cooper v. State,* 231 Md. 248, 253, 189 A. 2d 620 (1963).

## (4)

Appellant urges that the trial court erred in admitting, over objection, the testimony of the firefighter, Herbert Barthlow, that the deceased had told him "she had been beaten by two

40

white men * * * that they had started the fire in the bed and on the chair * * * [and] that they had tied her up." He claims that the State failed to lay a proper foundation for admission of the statement as part of the *res gestae*. However, we think no error was committed. As this Court stated in *Wilson v. State,* 181 Md. 1, 3-4, 26 A. 2d 770 (1942) :

> "Evidence of declarations and acts, which are an immediate accompaniment of the act charged and so closely connected with the main fact as to constitute a part of it, and without which the main fact might not be properly understood, are admissible as a part of the *res gestae*. The test as to whether a declaration or act offered in evidence is part of the *res gestae* is whether it was contemporaneous with the commission of the crime and so connected with it as to illustrate its character. Whether such a declaration or act is an immediate accompaniment is tested, not by the closeness of time, but by casual [causal] connection. A definite limit of time cannot be arbitrarily fixed for the reason that so long as the main transaction continues, declarations and acts emanating from it become a part of it."

See also *Tull v. State,* 230 Md. 596, 602-603, 188 A. 2d 150 (1963) ; *Purviance v. State,* 185 Md. 189, 199, 44 A. 2d 474 (1945) ; *Robinson v. State,* 57 Md. 14 (1881) ; *Bardoni v. U.S.,* 171 A. 2d 748 (D.C. Mun. App. 1961) ; 6 Wigmore, *Evidence* (3rd ed.), Sec. 1745-64.

Although the deceased's statement was made more than two hours after she was beaten, it was "so closely connected with the main fact as to constitute part of it," and thus it qualified as part of the *res gestae*. When discovered, the victim was still bound, the fire in the adjoining room had just been extinguished and there was smoke in the room in which she was confined. Barthlow's testimony shows that the statement was made immediately and spontaneously, obviously as the result of fear and excitement induced by the beating, the fire, and her precarious situation. Under the circumstances a sufficient

causal connection between the crime and the statement was shown, and hence appellant's contention is without merit.

## (5)

Next, appellant argues that the evidence produced was legally insufficient to sustain the robbery conviction, and that without this conviction he could not have been found guilty of murder in the first degree. Code (1957), Art. 27, Sec. 410, provides in part: "All murder which shall be committed in the perpetration of, or attempt to perpetrate, any * * * robbery * * * shall be murder in the first degree." The claim is that the only evidence connecting appellant with the robbery was his confession, and that this "of itself is insufficient evidence unless corroborated and connected by the State with other evidence" to implicate appellant in the robbery. In this State the rule is well established that an extra-judicial confession of guilt by an accused does not warrant his conviction unless there is also some independent evidence, either direct or circumstantial, tending to establish the *corpus delicti,* and the identity of the accused as the offender is not a necessary element of the corroboration. *Foster v. State,* 230 Md. 256, 186 A. 2d 619 (1962) ; *Pierce v. State,* 227 Md. 221, 175 A. 2d 743 (1961). In this case there was sufficient evidence, if believed, to establish the *corpus delicti* of the robbery, independent of the extra-judicial confession. Appellant, while on the witness stand, made a judicial confession of his part in planning the robbery and his participation in it by opening the door for his two co-conspirators. In addition, the victim was found beaten and bound; her son's testimony showed that a robbery had been committed, and appellant's brother-in-law associated all of the principals in a robbery planned for that evening. The weight of the evidence was for the triers of fact, and we see no error in the robbery conviction. Hence, since the murder was committed in the perpetration of a robbery, this was sufficient to support appellant's conviction of murder in the first degree under the provisions of Art. 27, Sec. 410, *supra.* Cf. *Lipscomb v. State,* 223 Md. 599, 165 A. 2d 918 (1960). This is so even though the appellant had no specific intent to do the killing himself. *Boblit v. State,* 220 Md. 454, 154 A. 2d 434 (1959).

## (6)

Appellant makes the bald assertion that the State suppressed evidence which would have indicated that no murder was contemplated in the original plans of the parties, but makes no specification of such alleged evidence whatsoever. We note that appellant's confession and testimony themselves indicated that the original conspiracy did not contemplate a murder, and there is no hint in the record that evidence of any kind was suppressed.

## (7) and (8)

Finally, appellant raises two issues as to the propriety of his sentences, the first being that the life sentence for murder was excessive. As conceded by appellant, the sentence was one of the two provided by Code (1957), Art. 27, Sec. 413 (the other being death), and in this State such a sentence is not reviewable on appeal. *Merchant v. State,* 217 Md. 61, 70, 141 A. 2d 487 (1958).

Secondly, appellant submits that this Court should consider the advisability of the adoption of a procedure whereby all parties to a crime involving more than one person, even if tried separately, would be sentenced by the same judge. He points out that he was the first of the four defendants to be tried, and that, notwithstanding his actual non-participation in the killing, it is possible that the other parties, including the actual perpetrators of the murder, could, if found guilty, be given either the same or a lesser sentence than the one he received. As appellant concedes, there is presently no provision in this State, either by law or rule, for the sentencing of multiple defendants by the same judge. At times due to death, incapacity, retirement, removal of the case, or for other reasons, this might be impossible. Even if those who actually inflicted the fatal beating were given the same sentence as the appellant, no invasion of equal protection would be involved.

Where two or more persons are convicted of the same crime and are not sentenced for the same terms under a statute permitting discretion in the length of sentence, no violence is done to the equal protection clause of the Fourteenth Amendment. *Howard v. Fleming,* 191 U. S. 126, 24 S. Ct. 49

(1903); *United States v. Vita,* 209 F. Supp. 172 (D.C.E.D. N. Y. 1962); *United States v. Litterio,* 153 F. Supp. 329 (D.C.S.D. Tex. 1957), aff'd 244 F. 2d 956 (5 Cir.), cert. den. 355 U. S. 849, 78 S. Ct. 75. See also *Reynolds v. Warden,* 229 Md. 623, 182 A. 2d 875 (1962); 12 Am. Jur., *Constitutional Law,* Sec. 562, p. 254.

Having found no error below, we shall affirm.

*Judgments affirmed.*