82 A.3d 851

**Anthony A. DZIKOWSKI**

v.

**STATE of Maryland.**

**No. 15, Sept. Term, 2011.**

Court of Appeals of Maryland.

Dec. 30, 2013.

432

Brian M. Saccenti, Asst. Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for petitioner.

Brenda Gruss, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BELL *, JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

BELL, C.J. (Retired).

We granted certiorari in this case to determine whether, when a defendant, upon timely request, is statutorily guaranteed a bill of particulars detailing the allegations against him and the factual basis of those allegations, the State's response to the defendant's request for a bill of particulars meets the statutory requirement if it merely directs the requesting defendant to the discovery it has provided, some of it voluntarily. The Circuit Court for Montgomery County answered that question in the affirmative. A divided Court of Special Appeals affirmed that judgment in an unreported opinion. We disagree with the judgments of the courts below and, thus, reverse.

## I.

The petitioner, Anthony Dzikowski, was driving a vehicle with five other passengers at 1:00 a.m. in Gaithersburg, Maryland on January 6, 2008, when he came upon a man, later

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

identified as Manuel Ramirez–Gavarete, standing in the middle of the road, and, as a result, had to swerve in order to avoid colliding with him. After passing Mr. Ramirez–Gavarete, however, and upon the suggestion of one of the passengers, the petitioner returned to the scene. Once there, when he and one of the passengers, Joshua Jones, got out of the vehicle, Mr. Ramirez–Gavarete, who appeared to be highly intoxicated, staggered towards them and attempted to hug or lean on the petitioner. The petitioner pushed him away, nearly knocking him into a slowly passing vehicle. Mr. Ramirez–Gavarete then approached Mr. Jones, who struck him in the face, knocking him down onto the roadway. The petitioner and Mr. Jones then immediately drove away, leaving Mr. Ramirez–Gavarete lying in the road. Shortly thereafter, another vehicle ran over Mr. Ramirez–Gavarete, killing him.

The State charged the petitioner with manslaughter, reckless endangerment, and conspiracy to commit assault, and he was tried in the Circuit Court for Montgomery County. As to the reckless endangerment count, the indictment, using the statutory "short form" prescribed by Maryland Code (2002) § 3–206(d)(2) of the Criminal Law Article [1] ("CL"), charged

---

**1.** Maryland Code (2002) § 3–206(d) of the Criminal Law Article ("CL") provides:

"*Reckless endangerment*

"(d)(1) To be found guilty of reckless endangerment under § 3–204 of this subtitle, a defendant must be charged specifically with reckless endangerment.

"(2) A charging document for reckless endangerment under § 3–204 of this subtitle is sufficient if it substantially states:

" '(name of defendant) on (date) in (county) committed reckless endangerment in violation of § 3–204 of the Criminal Law Article against the peace, government, and dignity of the State.'.

"(3) If more than one individual is endangered by the conduct of the defendant, a separate charge may be brought for each individual endangered.

"(4) A charging document containing a charge of reckless endangerment under § 3–204 of this subtitle may:

"(i) include a count for each individual endangered by the conduct of the defendant; or

that the petitioner, "on or about January 6, 2008, in Montgomery County, Maryland, committed reckless endangerment, in violation of Section 3–204[²] of the Criminal Law Article against the peace, government, and dignity of the State." Because the short form indictment was used, it did not set out the elements of the charged offense or the factual basis for that offense. In response, the petitioner, pursuant to Maryland Rule 4–241(a),³ timely requested that the State provide

---

"(ii) contain a single count based on the conduct of the defendant, regardless of the number of individuals endangered by the conduct of the defendant.

"(5) If the general form of charging document described in paragraph (2) of this subsection is used to charge reckless endangerment under § 3–204 of this subtitle in a case in the circuit court, the defendant, on timely demand, is entitled to a bill of particulars."

**2.** CL § 3–204 (2003 Cum. Sup.) provides:

"Reckless endangerment

"*Prohibited*

"(a) A person may not recklessly:

"(1) engage in conduct that creates a substantial risk of death or serious physical injury to another; or

"(2) discharge a firearm from a motor vehicle in a manner that creates a substantial risk of death or serious physical injury to another.

"*Penalty*

"(b) A person who violates this section is guilty of the misdemeanor of reckless endangerment and on conviction is subject to imprisonment not exceeding 5 years or a fine not exceeding $5,000 or both.

"*Exceptions*

"(c)(1)Subsection (a)(1) of this section does not apply to conduct involving:

"(i) the use of a motor vehicle, as defined in § 11–135 of the Transportation Article; or

(ii) the manufacture, production, or sale of a product or commodity.

"(2) Subsection (a)(2) of this section does not apply to:

"(i) a law enforcement officer or security guard in the performance of an official duty; or

"(ii) an individual acting in defense of a crime of violence as defined in § 5–101 of the Public Safety Article."

**3.** Maryland Rule 4–241 implements CL § 3–206(d)(5) insofar as it prescribes when a request for particulars must be made in order to be timely. It provides, in relevant part:

him with a bill of particulars, in response to the following questions:

"[9.] Describe the conduct of Mr. Dzikowski that allegedly constitutes reckless endangerment.

"[10.] State all the facts that tend to prove that Mr. Dzikowski acted recklessly.

"[11.] State all the facts which constitute conduct that created a substantial risk of death or serious physical injury to another.

"[12.] State all of the facts the State will rely on to prove Mr. Dzikowski consciously disregarded a substantial risk of death or serious physical injury to another."

The State responded, as follows:

"9. Mr Dzikowski's conduct that constitutes reckless endangerment is contained in discovery.

"10. The facts that prove Mr. Dzikowski acted recklessly are contained in discovery.

"11. The facts which constitute conduct that created a substantial risk of death or serious physical injury to Mr. Ramirez–Gavarete are contained in discovery.

"12. The facts that Mr. Dzikowski consciously disregarded as a substantial risk of death or serious physical injury to Mr. Ramirez–Gavarete are contained in discovery."

The petitioner timely filed exceptions to the State's responses, challenging the sufficiency of each response because, rather than specifically answering each question, the State simply directed the petitioner to discovery. Following a hearing, the trial court overruled the petitioner's exceptions, finding that the State's responses directing the petitioner to discovery satisfied the requirements of Maryland Rule 4–241(b), that the

"(a) Demand. Within 15 days after the earlier of the appearance of counsel or the first appearance of the defendant before the circuit court pursuant to Rule 4–213(c), the defendant may file a demand in circuit court for a bill of particulars. The demand shall be in writing, unless otherwise ordered by the court, and shall specify the particulars sought."

State's response "furnish[ed] the particulars sought."[4] It reasoned, citing *Polisher v. State*, 11 Md.App. 555, 276 A.2d 102 (1971), that Rule 4–241(b) "provides on demand for particulars as to the offense charged and not as to all the evidence which the State may adduce to prove it:"

"This Rule does not contemplate that the State particularize all the evidence it may offer. Now here we're talking evidence, we're not talking legal theory. This just deals with evidence. It's to secure facts, not legal theories. "So it's clear or no one is arguing that they don't have to give their legal theories and I believe that [ ] in large part is what the exceptions are to the bill of, the answer to the bill of particulars, that is, to ask the State their legal theories. And I don't believe I do find that the State does not have to give their legal theories on how they believe the involuntary manslaughter took place.

"I find that the defense has copies of statements of all the witnesses and they have 600 pages in discovery which the State is indicating gives them all their facts. . . .

"I believe that the purpose of the bill of particulars is met by the answer from the State. The State gave the [petitioner] open file discovery. If there are any major inconsistencies with what the State has told the Defense, the trial judge can address it as need be.

"But I'm not finding that the State has to give more than what they have."

In its opening argument, the State framed its theory as follows:

"This was senseless violence, needless for a man to lose his life[.]

\* \* \* \*

---

**4.** Maryland Rule 4–241(b) provides:

"Response to demand. Within ten days after service of the demand, the State shall file a bill of particulars that furnishes the particulars sought or it shall state the reason for its refusal to comply with the demand."

"But this was senseless, this was needless senseless violence that this defendant perpetrated on the victim, left him in the middle of the road, where he was then hit and killed by another car.

"Mr. Ramirez–Gavarete was no threat to the defendant, they didn't even know him. Manual Antonio Ramirez–Gavarete was 37 years old. He was a father, he was a working person, he did body and paint work at a local body shop in Rockville.

"And he went out drinking one night, and he walked home, he never made it home, because this defendant decided he wanted to mess with somebody that night.

"And more than mess with him, he and the co-defendant, Josh Jones, attacked Mr. Ramirez–Gavarete, left him in the road where the victim died.

"This case is a case of manslaughter. At the end of the case, we will ask, Mr. Roslund and I who represent the State of Maryland in this case, will ask you to return a verdict, guilty verdict of manslaughter for the killing of Mr. Ramirez–Gavarete, reckless endangerment, and conspiring with each other to commit an assault on the victim.

"Thank you."

Significantly, although the State mentioned that the petitioner pushed the victim, it did not reference or even mention that it was in the direction of a passing vehicle. Indeed, specifically describing the petitioner's interaction with the victim, the prosecutor focused on the connection between the actions of the petitioner and Mr. Jones, viewing them as related, not independent. He said:

"This defendant pushed Mr. Ramirez–Gavarete, Mr. Ramirez–Gavarete was stumbling at this point. The co-defendant then pushed Mr. Ramirez–Gavarete, Mr. Jones, together one followed by the other, this defendant followed by Mr. Jones.

"Mr. Jones then punched the victim, knocking Mr. Ramirez–Gavarete down, and for all inten[ts and] purposes, out.

\* \* \* \*

"Where did the victim fall? In the, literally in the middle of Muncaster Mill Road, a very dark, a very dangerous road. A dangerous road where this defendant left Mr. Ramirez–Gavarete sprawled out in the middle of [sic] on Sunday morning, January 6, 2008."

At the conclusion of the State's case-in-chief, the petitioner moved for judgment of acquittal on all three charges against him. The trial court granted the petitioner's motion as to the manslaughter and conspiracy counts, but denied it with regard to the reckless endangerment count. As to that count, and notwithstanding the State's theory of the case, the court ruled:

"On Count 2, reckless endangerment . . . Ms. Cleaver said that the taller man pushed the smaller man towards her car in a way she said, and I quote this, it was timed, as though it were planned that he when he pushed him, he would collide with this car.

"Now, it is true, as [the petitioner] pointed out, that the car was at a crawl, but if you lose your footing, and you fall underneath the wheels of a car going five miles an hour, you may be a dead person.

"So, I find that the action of him pushing the victim into the car in a timed fashion, which was three or four feet, according to Ms. Cleaver, constitutes, or is sufficient evidence from which a jury could conclude that there was reckless endangerment. . . ."

Armed with that ruling, the State thereafter proceeded on a new theory and factual basis. Instead of relying on the later act by Mr. Jones, the punching of the victim, knocking him down and leaving him in the road, to which the petitioner's earlier push was related, it relied on the fact that the petitioner pushed the victim in the direction of a slowly passing car, thus recklessly endangering him. And the jury found the petitioner guilty of reckless endangerment. The trial court denied the petitioner's motion for a new trial and sentenced him to five years in prison, suspending all but nine months and placing him on probation for three years.

The petitioner unsuccessfully appealed his conviction to the Court of Special Appeals, arguing, in part, that the trial court abused its discretion when it denied his exceptions to the State's non-specific responses to the questions posed in his demand for a bill of particulars and that he was prejudiced at trial by that ruling. This, he asserted, prevented him from preparing and executing a proper defense.

The petitioner timely filed a petition for writ of certiorari, which we granted, *Dzikowski v. State*, 419 Md. 646, 20 A.3d 115 (2011), to address three issues: (1) whether the trial court abused its discretion in overruling the petitioner's exceptions to the State's bill of particulars response; (2) whether the trial court abused its discretion by denying a new trial when the State refused to provide a proper response to the petitioner's bill of particulars and the trial court's decision to permit the State to change its theory of reckless endangerment unfairly surprised the petitioner and effectively foreclosed him from putting on a case; and, (3) whether the trial court erred in denying the petitioner's motion to dismiss when the trial court's decision to permit the State to change its theory of reckless endangerment rendered the indictment duplicitous. For the reasons that follow, we shall hold that the State's responses to the questions posed in the petitioner's demand for a bill of particulars were inadequate and, therefore, the trial court abused its discretion when it overruled the petitioner's exceptions to those responses. Consequently, we shall reverse the judgment of the Court of Special Appeals. As a result, we do not need to, and, thus, do not, reach the merits of the petitioner's other contentions.

## II.

The petitioner's argument in support of his contention that the trial court abused its discretion when it overruled his exceptions to the State's response to his demand for a bill of particulars, at bottom, is that, when the State charges a defendant using the statutory short form, discovery materials provided to him or her cannot substitute for the bill of particulars to which CL § 3–206(d)(5) entitles him. The peti-

tioner emphasizes that the purpose of a bill of particulars is to apprise the defendant of the charges against him and the factual basis supporting those charges, which, in turn, enables the defendant to prepare for trial, without the fear of, or the need to guard against, unfair surprise. This purpose, the petitioner asserts in his brief, required the State to submit "a document setting forth ... detailed information, and not merely a boilerplate statement that the facts sought were in the discovery." A response to a request for a bill of particulars that merely directs the defendant to discovery materials, as the State's response did, is inconsistent with that purpose, he submits, because it does not provide notice of the conduct from which the State's allegations arise.

The petitioner acknowledges that the Legislature, in enacting CL § 3–206, did not define "bill of particulars," or expressly state its purpose. Those omissions, he argues, were supplied by the Legislature's decision to include a right to a bill of particulars in CL § 3–206, and by the definitions of "bill of particulars," contained in legal dictionaries, *see* pp. 445–46, 82 A.3d at 860 *infra*, which would have informed the Legislature's understanding of the general form and substance of a bill of particulars. The petitioner also concludes that the State's use of a short form indictment and its refusal to particularize the conduct that gave rise to the reckless endangerment charge, caused him unfair surprise at trial and hindered his efforts to defend against the charge of reckless endangerment.

The petitioner asserts that without a specific response to his demand for a bill of particulars, he was unable to prepare properly for trial. Specifically, his defense to the reckless endangerment count, alleging conduct "which creates a substantial risk of death or serious physical injury to another," CL § 3–204(a)(1), rather than on the petitioner's pushing the victim in the direction of a slowly moving vehicle, naturally focused on those actions, on the night in question, that led, or were likely to lead, directly to the victim's death. The petitioner reasons that the State's failure to indicate which acts tended to prove the existence of reckless endangerment caused him to prepare a defense to the conduct option that

more immediately led to the petitioner's death—leaving him in the road—rather than the less likely option—the prior push by the petitioner, albeit in the direction of a slowly moving car, which left the victim standing.

The State acknowledges that "the reckless endangerment count against Dzikowski, set forth in the short form prescribed by Section 3–206 of the Criminal Law Article, gave no information regarding the allegation of reckless endangerment except for the date and county of the offense[,]" and "contained neither the conduct constituting reckless endangerment, nor the name of the victim." It also concedes "that the bill of particulars that [the petitioner] was entitled to by statute was a bill particularizing the facts underlying the charges[.]" Nevertheless, the State maintains that the trial court did not err when it overruled the petitioner's exceptions to its answer to the petitioner's demand for a bill of particulars.

The State first argues that, if it were forced to particularize the facts underlying its reckless endangerment charge, it, effectively, would have been forced to reveal its legal theory of the case. For support, the State cites *Hadder v. State*, 238 Md. 341, 351, 209 A.2d 70, 75 (1965), which, it argues, limits the scope of a bill of particulars by precluding the use of a bill to obtain the State's legal theory of a case.

Citing *Spector v. State*, 289 Md. 407, 425–27, 425 A.2d 197, 205–07 (1981), and two cases decided by the Court of Special Appeals, *Grant v. State*, 55 Md.App. 1, 32, 461 A.2d 524, 539 (1983), and *Polisher v. State*, 11 Md.App. 555, 591, 276 A.2d 102, 120 (1971), *cert. denied*, 262 Md. 749 (1971), 404 U.S. 984, 92 S.Ct. 449, 30 L.Ed.2d 368 (1971), the State also argues that, because "discovery apprises the defendant of the facts that may be used to prove the charges against him, the objectives of a bill of particulars may be satisfied by the State's voluntary disclosure." The premise of this argument is that the open-file discovery used in this case, once coupled with the direction that the petitioner consult that discovery, constituted a form of voluntary disclosure, which satisfied the underlying

purposes of a bill of particulars, such that an actual bill of particulars was not, in fact, warranted.

Proceeding from these premises, the State submits that the petitioner could not have been subjected to unfair surprise at trial because he received the required notice of the facts that gave rise to the reckless endangerment charge. It reasons that since there was a single reckless endangerment charge, and only three possible actions to which that charge could possibly correspond, the State's focus on the petitioner's pushing the victim could neither have subjected the petitioner to unfair surprise, nor caused the petitioner any prejudice. In that regard, the State emphasizes that a case generally may go to a jury on any theory supported by the evidence, even if it was not previously advanced by the prosecution. Therefore, it contends that, despite the fact the State did not state, before trial, that it would be relying on the initial push as the primary basis of the reckless endangerment charge, the petitioner, in light of the discovery, was equipped with all the necessary facts to prepare its defense. The State thus concludes that the petitioner's demand for a further particularized description of the facts was aimed at learning the State's legal theory of the case, to which he was certainly not entitled.

█ We begin with an overview of the nature and purpose of a "bill of particulars," as it relates to the constitutional underpinnings of a charging document. An indictment is defined as "[t]he formal written accusation of a crime, made by a grand jury and presented to a court for prosecution against the accused person." Black's Law Dictionary 842 (9th ed. 2009). It is a well-settled principle of criminal law that the purpose of an indictment is "to inform the defendant of the charge against him in order that he may prepare his defense and may also protect himself against a subsequent prosecution for the same offense." *Seidman v. State*, 230 Md. 305, 312, 187 A.2d 109, 113 (1962). This principle is rooted in the due process requirement of notice under the Fourteenth Amendment to the United States Constitution, and, more specifically, Article 21 of the Maryland Declaration of Rights, which pro-

vides, in part, that a defendant, in all criminal prosecutions, has the "right to be informed of the accusation against him," and to be provided with "a copy of the Indictment, or charge, in due time (if required)" to enable him to prepare for his defense. *See Pearlman v. State,* 232 Md. 251, 257, 192 A.2d 767, 771 (1963), *cert. denied,* 376 U.S. 943, 84 S.Ct. 797, 11 L.Ed.2d 767 (1964).

■ Under Maryland law, a charging document satisfies the requirement imposed by Article 21 "that each person charged with a crime be informed of the accusation against him," by first, "characterizing the crime and, second, by so describing it as to inform the accused of the specific conduct with which he is charged." *Jones v. State,* 303 Md. 323, 336, 493 A.2d 1062, 1069 (1985); *Williams v. State,* 302 Md. 787, 790–91, 490 A.2d 1277, 1279 (1985); *State v. Morton,* 295 Md. 487, 491, 456 A.2d 909, 911 (1983); *Ayre v. State,* 291 Md. 155, 163, 433 A.2d 1150, 1155 (1981). This has been held to mean that, specifically, a criminal charge must:

"(i) . . . put the accused on notice of what he is called upon to defend by characterizing and describing the crime and conduct; (ii) . . . protect the accused from a future prosecution for the same offense; (iii) . . . enable the defendant to prepare for trial; (iv) . . . provide a basis for the court to consider the legal sufficiency of the charging document; and (v) . . . inform the court of the specific crime charged so that, if required, sentence may be pronounced in accordance with the right of the case."

*Ayre,* 291 Md. at 163, 433 A.2d at 1155. Maryland Rule 4–202(a), in implementation of these requirements, thus, requires that a charging document "contain a concise and definite statement of the essential facts of the offense with which the defendant is charged and, with reasonable particularity, the time and place the offense occurred."

■ In cases in which a defendant is charged by short form indictment, the common law rule in this State is that the "charging document must allege the essential elements of the offense charged," *Jones,* 303 Md. at 336–37, 493 A.2d at 1069;

*Pearlman,* 232 Md. at 257–58, 192 A.2d at 771; *Neusbaum v. State,* 156 Md. 149, 155–56, 143 A. 872, 875–76 (1928), although it need not do so expressly; "elements may be implied from language used in the indictment or information." *Jones,* 303 Md. at 337, 493 A.2d at 1069. The manner or means of committing the offense, if not otherwise provided by the prosecutor, is obtainable through a bill of particulars. *Id.* at 339, 493 A.2d at 1070. Therefore, we said in *Pearlman:* "Statutes prescribing a short form of indictment—provided the simplified form contains the essential elements of the crime it purports to charge—are generally upheld on the ground that the right of the defendant to demand the particulars of the accusation protects him against injury." 232 Md. at 257–58, 192 A.2d at 771 (citing *Neusbaum v. State,* 156 Md. at 156–157, 143 A. at 875; *Kelley v. State,* 181 Md. 642, 647, 31 A.2d 614, 616 (1943)).

As we have seen, CL § 3–206(d), which prescribes the short form indictment for reckless endangerment, carries this principle a step further, by making a bill of particulars mandatory, if timely demanded, whenever a statutory short form indictment is used to charge that crime. CL § 3–206(d)(5).

A "bill of particulars," which this Court has not explicitly defined, is, according to the Black's Law Dictionary 189 (9th ed. 2009), "a formal, detailed statement of the claims or charges brought by a plaintiff or a prosecutor, usu[ally] filed in response to the defendant's request for a more specific complaint." Stated differently, it is "a formal written statement by the prosecutor providing details of the charges against the defendant. Its functions are to give the defendant notice of the essential facts supporting the crimes alleged in the indictment or information, and also to avoid prejudicial surprise to the defense at trial." 1 Charles Alan Wright et al., Fed. Prac. & Proc.Crim. § 130 (4th ed., April 2012 Update).

Generally, the decision whether to grant or refuse a request for a bill of particulars is committed to the sound discretion of a trial court. *Veney v. State,* 251 Md. 159, 163, 246 A.2d 608, 611 (1968); *Seidman v. State,* 230 Md. 305, 313,

187 A.2d 109, 114 (1962). In this case, the parties agree that the petitioner was statutorily entitled to a bill of particulars pursuant to CL § 3–206(d)(5). Nevertheless, the decision to sustain or overrule the petitioner's exceptions to the bill of particulars filed by the State, that is, the determination of whether the particulars provided were legally sufficient, is also generally committed to the discretion of the trial court. *See Williams v. State,* 226 Md. 614, 619, 174 A.2d 719, 721 (1961) (applying an abuse of discretion standard in determining whether to grant the State's exceptions to the questions posed in the defense's demand).

■ While we have not previously outlined the parameters of the bill itself, we have recognized that its purpose "is to guard against the taking of an accused by surprise by limiting the scope of the proof." *McMorris v. State,* 277 Md. 62, 70 n. 4, 355 A.2d 438, 443 n. 4 (1976).[5] This allows the defendant to prepare a defense properly, including the process of securing witnesses. A bill of particulars provides "a means of ascertaining the exact factual situation upon which [a defendant] was charged." *Id.* A bill specifies particulars as to the offense charged and not as to all evidence that the State may adduce to prove it. *Polisher v. State,* 11 Md.App. 555, 591, 276 A.2d 102, 120 (1971).

■ The bill of particulars functions as a limit on the factual scope of the charge, rather than its legal scope. *See Hadder v. State,* 238 Md. 341, 351, 209 A.2d 70, 75 (1965) (quoting *Rose v. United States,* 149 F.2d 755, 758 (9th Cir. 1945)). It is not to be used as an instrument to require the State "to elect a theory upon which it intends to proceed." *Id.* Instead, it "is a privilege allowed to the accused where the indictment is so general that it fails to disclose information sufficient to afford him a fair and reasonable opportunity to

---

**5.** The Court of Special Appeals has similarly observed that a bill of particulars specifies facts as to the offense charged and not as to all evidence that the State may adduce to prove it. *Polisher v. State,* 11 Md.App. 555, 276 A.2d 102, *cert. denied,* 262 Md. 749 (1971), 404 U.S. 984, 92 S.Ct. 449, 30 L.Ed.2d 368 (1971).

meet it and defend himself." *Hubin v. State,* 180 Md. 279, 285, 23 A.2d 706, 709 (1942).

 Indeed, a bill of particulars, when guaranteed as a supplement to a short form indictment, is designed to provide the defendant with information with which he would have been supplied had he been indicted using the standard indictment, which constitutes notice that is constitutionally required to be given in order to apprise the defendant of the crime with which he is accused, as well as of the particular conduct to which that accusation relates and refers. We agree, therefore, that the function of a bill of particulars is:

> "[T]o amplify a pleading by stating more minutely and particularly a claim or defense pleaded in general terms, apprise the opposing party of the details of a claim or defense so that the opposing party may be aided in framing his or her responsive pleading[,] and in preparing for a trial."

71 C.J.S. Pleading § 543 (2012). A bill of particulars, therefore, must, at the very least, provide the defendant with "a means of ascertaining the exact factual situation upon which [he or she] was charged." *McMorris,* 277 Md. at 70 n. 4, 355 A.2d at 443 n. 4.

 In the present case, the short form indictment charged, as our cases make clear it could do, *see Jones,* 303 Md. at 338–39, 493 A.2d at 1070, only that the petitioner, "on or about January 6, 2008, in Montgomery County, Maryland, did commit reckless endangerment, in violation of Section 3–204 of the Criminal Law Article." Implying from the use of the term, "reckless endangerment," the essential elements of that crime, as our cases instruct, *see e.g. Jones,* 303 Md. at 336–37, 493 A.2d at 1069, and from that, conceding that the indictment accomplishes one of the two objectives of a charging document—to characterize the crime—the indictment fails to accomplish the other—to provide "such a description of the particular act to have been committed as to inform [the accused] of the specific conduct with which he is charged." *Ayre,* p. 163, 433 A.2d at 1155 *supra.* This failure, at common

law, *Stevens v. State*, 232 Md. 33, 38, 192 A.2d 73, 76–77 (1963); *Hadder v. State*, 238 Md. 341, 350–51, 209 A.2d 70, 75 (1965), and more recently, by statute, CL § 3–206(d)(5), was required to be corrected by a bill of particulars supplementing the short form indictment.[6] That is the purpose of CL § 3–206(d)(5); it makes clear that, upon the defendant's timely and proper demand, a bill of particulars is a mandatory supplement to a short form indictment. As we have seen, such a demand was made in this case and, in response, the State filed the demanded bill of particulars. We must determine whether that bill of particulars was sufficient.

The State violated CL § 3–206(d)(5) when it filed a bill of particulars in which, rather than inform the petitioner of the conduct that was the basis for the reckless endangerment count, it instead simply directed the petitioner to discovery. In so doing, the State switched the burden to the petitioner to identify the facts underlying the indictment. Because a charging document must inform the defendant "of the specific conduct with which he is charged," *Ayre*, p. 163, 433 A.2d at 1155 *supra*, logically, and by Rule, see Rule 4–241, a bill of particulars, in supplementation of a short form indictment that fails to so inform, must specify the alleged conduct to which the subject charge relates. Discovery, even open-file discovery, that includes police reports and witness statements, is not the same and cannot substitute for a legally sufficient bill of particulars. While such discovery may contain the full facts of the case, when a defendant is charged using a short form indictment, it is not, and cannot be, a substitute, or satisfy a

---

**6.** This Court has encouraged defendants to seek such clarification on charges when appropriate. *See, for example, Campbell v. State*, 325 Md. 488, 503, 601 A.2d 667, 674 (1992) (noting that the defendant could have demanded a bill of particulars in a case in which he alleged an insufficient indictment); *Putnam v. State*, 234 Md. 537, 545–46, 200 A.2d 59, 64 (1964) (noting that the defendant could have demanded a bill of particulars in a case in which he challenged the sufficiency of the information under which he was charged); *Stevens v. State*, 232 Md. 33, 38, 192 A.2d 73, 76 (1963) (stating "had the indictment been insufficient to inform [the defendant] of the charge against him he could have demanded a bill of particulars, which he did not do").

demand, for a bill of particulars. Discovery does not particularize or relate, from the perspective of the State, the factual information contained therein to the offense charged. It is this perspective and relation of factual information to the offense charged that satisfies the form and substance of a bill of particulars.

*Spector v. State*, 289 Md. 407, 425 A.2d 197 (1981) is not to the contrary. In *Spector*, as relevant to this case, the issue was whether the trial judge abused his discretion when he denied the defendants' demand for a bill of particulars. The three indictments as to which the defendants sought particulars charged them with bribing an Assistant Attorney General for the State of Maryland "for the purpose of influencing him in the performance of his official duties." *Id.* at 410, 425 A.2d at 198. The defendant's demand for particulars included:

"[T]he specific official duties or acts of Noren which the defendants 'allegedly influenced or sought to influence by the payment of the alleged bribe'; '(t)he specific influence, which the payment of the aforesaid bribe had or was intended to have upon the official duties of ... Noren'; '(t)he manner in which the State contends there was any deviation from what it maintains was the proper conduct by ... Noren of his official duties as any such alleged deviations relates [sic] to the charges contained' in the respective indictments; the identity of 'those individuals employed by any governmental agency or unit who had authority with regard to the matters complained of in the indictment concerning the exercise by ... Noren of his official duties,' with an indication as to 'the nature of the authority reposed in each such individual and whether that authority was exercised or was to be exercised in any manner in connection with the indictment charged and, if so, in what manner'; the date of the document or documents evidencing the payment of the sums in question, 'stating if the alleged payment was made by check, whose signature appears on the check' together with the identity of the custodian of the document; and the date of the document or documents evidencing the performance or contemplated performance of Noren's official duties allegedly influenced or intended to be

influenced by the giving of and his receipt of a bribe together with the identity of the custodian of the document." *Id.* at 417–18, 425 A.2d at 202. The State's exception to the first of the defendants' demands, was overruled. *Id.* at 418, 425 A.2d at 202. The State answered that demand, as follows:

"1. Part of the duties of Donald H. Noren, as an Assistant Attorney General assigned to the Department of Health and Mental Hygiene was to represent that Department before the Board of Review which determined whether grounds existed upon which to base the granting of exceptions to any moratoriums handed down by the Department. It was Mr. Noren's duties before the Board of Review that Mr. Spector and Mr. Wyatt influenced or sought to influence[,]"

*Id.* at 418, 425 A.2d at 202, to which the defendants excepted. *Id.* The court sustained the exception and the State filed an additional answer, this time more specifically answering the defendant's demand. *Id.* The defendants nevertheless excepted again. *Id.* at 419, 425 A.2d at 202. While the court ordered the State to strike a single phrase from its subsequent answer, it otherwise denied the defendants' exception. *Id.* at 419, 425 A.2d at 202–03. In concluding that the trial judge did not abuse his discretion when he denied the defendants' exceptions, we commented:

"The answers filed by the State in response to the demands of the defendants for discovery included listing the names and addresses of all witnesses the State proposed to call, among whom were the three individuals whose applications before the board were involved in the alleged bribery scheme here. The indictment set forth the approximate dates and amounts of each payment. The file which the defendants were privileged to examine would have revealed the checks in the amounts of the alleged bribes. The particulars specified the duties of Noren. We find no abuse of discretion by the trial court in denying the motion for particulars."

*Id.* at 425, 425 A.2d at 206.

*Spector* certainly does not support the State's argument that, by voluntarily disclosing facts supporting its allegations

through an open-file discovery, that included police reports and witness statements, an answer to the petitioner's demand for a bill of particulars was not warranted. Moreover, *Spector* does not involve a short form indictment and it does not address whether, in response to a defendant's demand, a bill of particulars referring the defendant to discovery for answers to his demand was sufficient. Nor was the defendant in that case mandatorily entitled to a bill of particulars.

As indicated, the State relies on *Hadder v. State*, 238 Md. 341, 351, 209 A.2d 70, 75 (1965), both for the proposition that a bill of particulars cannot be used to obtain the State's legal theory, and for its conclusion that, were it forced to particularize the facts supporting its charge, beyond merely directing the petitioner to discovery, it would have been forced to reveal its theory of the case. Before addressing the State's reading of *Hadder*, we first note that the petitioner's demand for a bill of particulars did not seek the State's legal theory of the case. Instead, he demanded only that to which he was statutorily entitled—the factual basis underlying the reckless endangerment charge. To wit:

"[9.] Describe the conduct of Mr. Dzikowski that allegedly constitutes reckless endangerment.

"[10.] State all the facts that tend to prove that Mr. Dzikowski acted recklessly.

"[11.] State all the facts which constitute conduct that created a substantial risk of death or serious physical injury to another.

"[12.] State all of the facts the State will rely on to prove Mr. Dzikowski consciously disregarded a substantial risk of death or serious physical injury to another."

*Hadder* is inapposite. There, the defendant demanded a bill of particulars, encompassing "a number of items, including one for the particulars as to 'the * * * hypothesis of commission' of the crime charged," which the Court "assume[d] ... was an expression of a desire to make the State give the defense its theory of the case." *Hadder*, 238 Md. at 350, 209 A.2d at 75. "All of the particulars requested were furnished

except this one." *Id.* This Court concluded that the defendant's unanswered request was an attempt to force the State to select and state its theory of that case. *Id.*

The present case is quite different. The petitioner's demand for particulars expressly asked that the State either describe or state the conduct and/or the facts supporting the reckless endangerment charge, not a "hypothesis of commission." In addition, in the present case, there were multiple, possibly distinct, acts by more than one party that could support the charge. *Hadder* involved only the conduct of a single defendant, and the same conduct could have supported more than one theory of murder. Finally, the prosecution in *Hadder* furnished all of the particulars that were demanded, except the one that asked for a "hypothesis of commission." In this case, although the State answered each request, it did so without providing any facts, just a general referral to the extensive discovery material.

As noted above, CL § 3–206(d)(5) expressly provides that, on timely demand, a defendant, upon being indicted for reckless endangerment using the statutory short form prescribed in CL § 3–206(d)(2), is entitled to a bill of particulars. The viability of this mandate is not dependent on, or subject to, discovery. Given the definition of a "bill of particulars," we conclude that the "demand" to which subsection (d)(5) refers is intended to place a burden upon the State to supply the defendant with the basic facts supporting its charge(s). If the mere existence of discovery were sufficient to provide a defendant with the notice required by Article 21, CL § 3–206(d)(5) would be both superfluous and surplusage, and the right it prescribes, nugatory. *See Whiting–Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 302, 783 A.2d 667, 671 (2001) ("[W]henever possible, the statute should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory.").

We therefore reject the State's argument that an answer detailing the factual basis for its charges was unnecessary and that the petitioner was already on notice because the petition-

er was only required to determine which of three distinct actions constituted the grounds for the reckless endangerment charge. The State's obligation to furnish a bill of particulars upon the defendant's demand where a short form indictment is used, is not dependent upon or related to the complexity of the facts underlying the case, or the amount of effort that an accused person would need to put forth, in the absence of a bill of particulars, to determine what conduct constitutes the crime with which he is charged. The information requested by the petitioner was that which the State, had it used a traditional charging document, would have been constitutionally required to furnish. Were we to conclude otherwise, we would effectively permit the State to circumvent the obligations imposed upon it by the State Constitution through the use of a statutory short form charging document, which, by the terms of the legislation authorizing it, shows the Legislature's intent to avoid such circumvention. Indeed, it is this very result, we submit, that the Legislature sought to prohibit by providing an accused person, who timely demands a bill of particulars, with the right to a specific statement informing him or her of the factual basis for the charges.

Nothing in this opinion is intended to suggest that CL § 3–206 or Rule 4–241 requires that, when furnishing a bill of particulars, the State must make an election between the facts relevant to proving its case. Merely directing a defendant to discovery simply is not responsive to a demand for a bill of particulars and certainly does not provide the constitutionally required notice, which includes the elements of the charges and their corresponding factual bases.

It follows that the trial court, thus, abused its discretion when it overruled the petitioner's exceptions to the State's bill of particulars.

## III.

Given the trial court's legal error, we next turn to whether that error warrants reversal.

The State argues that, even if the trial court erred in denying the petitioner's exceptions, the petitioner failed to demonstrate prejudice. It argues, in that regard, that "the discovery notified the petitioner of all the witnesses to the 'timed push,' and [the petitioner's] cross-examination of the State's witnesses (as well as some of their direct testimony) yielded substantial grist for closing argument."

▓▓▓▓▓▓ Whether the petitioner suffered prejudice, or whether his counsel was able to reap "substantial grist" for closing argument, is not the test for reversal in the event that a defendant establishes error in a criminal case. The proper test is one of harmless error. In *Dorsey v. State,* we explained that standard:

> "When an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict."

276 Md. 638, 659, 350 A.2d 665, 678 (1976). In effect, this standard requires that the reviewing court reverse the judgment under review unless that court is confident beyond a reasonable doubt that the trial court's error in no way influenced the verdict in that case. Unsurprisingly, we have described this test as "the standard of review most favorable to the defendant short of an automatic reversal." *Bellamy v. State,* 403 Md. 308, 333, 941 A.2d 1107, 1121 (2008).

▓▓▓▓ We are aware that the Court of Special Appeals, in at least one published opinion, *Robinson v. State,* 209 Md.App. 174, 58 A.3d 514 (2012), *cert. denied,* 431 Md. 221, 64 A.3d 497 (2013), rather than apply the harmless error test as articulated in *Dorsey,* has instead focused on the fairness of the trial and/or the actual prejudice suffered by the defendant. As the

above quoted passage from *Dorsey* makes clear, that approach is plainly incorrect. In *Dorsey,* we stated:

"An evidentiary or procedural error in a trial is bound, in some fashion, to affect the delicately balanced, decisional process. The abnegation of a particular rule upon which the defense intended to rely may often inflict more damage than initially apparent; a meritorious line of defense may be abandoned as a result; an important witness may not be called; strategies are often forsaken. The future course of the trial inevitably must be changed to accommodate the rulings made. It is the impact of the erroneous ruling upon the defendant's trial and the effect it has upon the decisional process which is of primary concern, not whether the error is labeled as constitutional or nonconstitutional.

276 Md. at 657–58, 350 A.2d at 677. Consistently, therefore, *Robinson* and any other case, to similar effect, is overruled to the extent that it or they failed to apply the harmless error review standard.

As we have seen, the essential purpose of a charging document is to notify the defendant of the scope of evidence for trial. It is possible that the petitioner was prejudiced when the trial court permitted the State to proceed upon a factual basis, on which it did not rely, or even acknowledge, in the indictment, in the bill of particulars it filed and throughout the first half of the trial. Under these circumstances, we cannot conclude beyond a reasonable doubt that the trial court's error in overruling the petitioner's exceptions was harmless. The reason is that the record demonstrates that all parties began the trial assuming that the more serious act of leaving an impaired, and possibly unconscious, man lying in the road, served as the factual focal point of all of the charges against the petitioner. Had the State notified the petitioner that the basis for the reckless endangerment charge was the "timed push," and not the knockdown punch that, objectively, more directly related to the victim's death, *or* that both events were the bases for its reckless endangerment charge, the petitioner may have adopted a different strategy at trial or otherwise altered his preparations (i.e. he may have identified

different witnesses, possibly expert witnesses, or possibly altered the focus of his cross-examinations). We simply cannot reasonably predict with the degree of certainty required, what impact proper notice from the State would have had on the evidence available to the jury and/or the consideration it might have given that evidence.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND TO REMAND THE CASE TO THAT COURT FOR NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY MONTGOMERY COUNTY.**