*In re: J.H.*, No. 2461, September Term 2018.

**INDICTMENT AND CHARGING INSTRUMENTS > IN GENERAL**
                                        **NATURE AND PURPOSES**
                                        **BILL OF PARTICULARS**

Generally, whether to grant or refuse a demand for a bill of particulars is within the trial court's discretion, as is the determination of whether the particulars provided were legally sufficient.

**INDICTMENT AND CHARGING INSTRUMENTS > IN GENERAL**
                                        **NATURE AND PURPOSES**
                                        **BILL OF PARTICULARS**

The juvenile court's decision to overrule Appellant's exceptions to the State's failure to respond to a bill of particulars is reviewed for abuse of discretion.

**INDICTMENT AND CHARGING INSTRUMENTS > IN GENERAL**
                                        **NATURE AND PURPOSES**
                                        **BILL OF PARTICULARS**

A bill of particulars, while not clearly established by Maryland canon, can be defined as "a formal written statement by the prosecutor providing details of the charges against the defendant. Its functions are to give the defendant notice of the essential facts supporting the crimes alleged in the indictment or information, and also to avoid prejudicial surprise to the defense at trial.

**INDICTMENT AND CHARGING INSTRUMENTS > IN GENERAL**
                                        **NATURE AND PURPOSES**
                                        **BILL OF PARTICULARS**

A bill of particulars is only applicable in criminal proceedings.

**INDICTMENT AND CHARGING INSTRUMENTS > IN GENERAL**
                                        **NATURE AND PURPOSES**
                                        **BILL OF PARTICULARS**

The purpose of this type of demand is to ensure that the accused is well informed regarding the scope of proof that the State will be offering to prove its case against the accused.

**INDICTMENT AND CHARGING INSTRUMENTS > IN GENERAL**
                **NATURE AND PURPOSES**
                **BILL OF PARTICULARS**

A bill of particulars is most relevant in proceedings where the defendant is charged by a short form indictment.

**INDICTMENT AND CHARGING INSTRUMENTS > IN GENERAL**
                **NATURE AND PURPOSES**
                **BILL OF PARTICULARS**

Juvenile petitions are governed by Md. Rule § 11-803, as promulgated by Md. Code. Ann., Cts. and Jud. Proc. § 3-8A-13(a) which provides, in part, that the petition must state the facts, in clear and simple language, on which the allegations are based. If the commission of one or more delinquent acts or crimes is alleged, the petition shall specify the laws allegedly violated by the respondent.

**INDICTMENT AND CHARGING INSTRUMENTS > IN GENERAL**
                **NATURE AND PURPOSES**
                **BILL OF PARTICULARS**

In the instance that a juvenile believes that the charging petition is insufficient to advise them of the factual situation upon which they are accused, the petition can be supplied through other means, so long as the essential elements of the charged offense have been identified.

**INDICTMENT AND CHARGING INSTRUMENTS > IN GENERAL**
                **NATURE AND PURPOSES**
                **BILL OF PARTICULARS**

Given that juvenile proceedings are governed by the Maryland Rules, which specifically do not permit a juvenile to avail themselves of a remedy of an alleged deficient petition through a demand for a bill of particulars, we accept the State's argument that Appellant was not entitled to a demand for a bill of particulars in the juvenile proceeding.

**INDICTMENT AND CHARGING INSTRUMENTS > IN GENERAL**
                **NATURE AND PURPOSES**

The petition was sufficient when it stated in clear simple language the facts that constituted the delinquency, i.e., that the genital area included the vaginal and anal area, where the perineum is located.

**CRIMINAL LAW > JUVENILE JUSTICE**
                    **EVIDENCE**
                    **DEGREE OF PROOF**

In determining whether the evidence was sufficient to show that a juvenile has committed a delinquent act, we utilize the same standard of review that applies in criminal cases: whether the evidence, adduced either directly or by rational inference, enabled the trier of fact to be convinced beyond a reasonable doubt that the Appellant committed the act.

**CRIMINAL LAW > SEX OFFENSES**
                    **IN GENERAL**
                    **BODILY CONTACT, PENETRATION**

The expression "genital opening" is defined neither by case law nor statute in Maryland

**STATUTES > CONSTRUCTION**
                    **PLAIN LANGUAGE; PLAIN ORDINARY OR COMMON**
                    **MEANING**
                    **IN GENERAL**

When examining the language of the statute, "[t]he language of the statute itself is the primary source of [legislative] intent; and the words used are to be given their ordinary and popularly understood meaning, absent a manifest contrary legislative intention.

**INFANTS > SEX OFFENSES**
                    **CRIMINAL ACTS AGAINST CHILDREN**
                    **EVIDENCE ISSUES PARTICULAR TO OFFENSES AGAINST**
                    **CHILDREN**
                    **WEIGHT AND SUFFICIENCY**
                    **INTENT, STATE OF MIND, AND MOTIVE**

Absent any mention of the perineum in jurisdictions that define genital opening in some form or fashion, save one, we decline to define the perineum as a genital opening. In also considering the medical definition of perineum and the common understanding of opening, we acknowledge that the perineum does not have an entrance or exit. While it can be lacerated or torn, as it was in this case, it does not permit access to anything.

**INFANTS > SEX OFFENSES**
**CRIMINAL ACTS AGAINST CHILDREN**
**EVIDENCE ISSUES PARTICULAR TO OFFENSES AGAINST**
**CHILDREN**
**WEIGHT AND SUFFICIENCY**
**INTENT, STATE OF MIND, AND MOTIVE**

We do not diminish the clear evidence that there has been some sexual contact, evidenced by the healing tear in the victim's perineum. Still, the evidence presented in reference to that contact was insufficient for a rational fact finder to conclude beyond a reasonable doubt that Appellant's conduct satisfied the requirements of CR § 3-306. Therefore, the second-degree sex offense finding is reversed.

**CRIMINAL LAW > REVIEW**
**SCOPE OF REVIEW IN GENERAL**
**REVIEW DE NOVO**

When the evidentiary determination also involves a question of law, such as whether the evidence is relevant or constitutes hearsay under Maryland statutes, that legal issue is reviewed de novo.

**CRIMINAL LAW > EVIDENCE**
**HEARSAY**
**HEARSAY IN GENERAL**

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

**CRIMINAL LAW > EVIDENCE**
**HEARSAY**
**HEARSAY IN GENERAL**
**EVIDENCE AS TO INFORMATION ACTED ON**

One of the numerous ways that a statement can be admissible as non-hearsay is if it is offered for the purpose of showing that a person relied and acted upon the statement, rather than for the purpose of showing that the facts elicited in the statement are true.

**CRIMINAL LAW > EVIDENCE**
**HEARSAY**
**HEARSAY IN GENERAL**
**EVIDENCE AS TO INFORMATION ACTED ON**

We find no implication of hearsay here, as the mother's statements were offered for a purpose other than to assert the truth of its contents. Accordingly, the juvenile court did not abuse its discretion in admitting the mother's statements, and we need not discuss whether the mother's statements regarding the hospital visit were admitted for a hearsay purpose.

**CRIMINAL LAW > EVIDENCE**
**HEARSAY**
**HEARSAY IN GENERAL**
**PROMPT COMPLAINT EXCEPTION**

The prompt complaint exemption is grounded in the long-recognized Maryland common law hearsay exception for a victim's timely complaint of a sexual assault.

**SEX OFFENSES >   EVIDENCE**
**ADMISSIBILITY OF VICTIM'S COMPLAINTS,**
**STATEMENTS, AND DECLARATIONS**
**SCOPE OF TESTIMONY; DETAILS**

The purpose of the prompt complaint exception in Maryland is to corroborate the victim's testimony, and not simply to combat stereotypes held by jurors regarding nonreporting victims.

**SEX OFFENSES >   EVIDENCE**
**ADMISSIBILITY OF VICTIM'S COMPLAINTS,**
**STATEMENTS, AND DECLARATIONS**
**SCOPE OF TESTIMONY; DETAILS**

We respect and accept the juvenile court's understanding of children's concept of time and thus, find no substantive inconsistency in the content of the victim's out of court statement and the testimony of her mother and Ms. Finamore about her report of the sexual assault.

**CRIMINAL LAW > REVIEW**
**SCOPE OF REVIEW IN GENERAL**
**COMPETENCY IN GENERAL**
**EVIDENCE ADMISSIBLE BY REASON OF ADMISSION**
**OF SIMILAR EVIDENCE OF ADVERSE PARTY**

The Court of Appeals has recently delved into the standard of review for the opening the door doctrine, finding that the inquiry as to whether counsel has opened the door is a legal one, considering that the open-door doctrine is a rule of expanded relevance. Therefore, this Court reviews the question of whether a party opened the door to introduce rebuttal evidence de novo.

**CRIMINAL LAW > REVIEW**
  **SCOPE OF REVIEW IN GENERAL**
  **COMPETENCY IN GENERAL**
  **EVIDENCE ADMISSIBLE BY REASON OF ADMISSION**
  **OF SIMILAR EVIDENCE OF ADVERSE PARTY**

Once the door has been "opened" for the purposes of incompetent evidence, or evidence inadmissible for reasons other than relevancy, a second inquiry is made regarding the proportionality of the rebuttal evidence.

**CRIMINAL LAW > REVIEW**
  **DOCTRINE OF COMPLETENESS**

We accept the State's assertion that the juvenile court did not enter portions of the victim's interview under the doctrine of completeness, and therefore this principle is inapplicable to this case.

**CRIMINAL LAW > REVIEW**
  **SCOPE OF REVIEW IN GENERAL**
  **COMPETENCY IN GENERAL**
  **EVIDENCE ADMISSIBLE BY REASON OF ADMISSION**
  **OF SIMILAR EVIDENCE OF ADVERSE PARTY**

This opening the door doctrine offers relief when one party introduces evidence that was previously irrelevant, over objection, and in doing so, makes relevant an issue in the case, permitting the trial court to determine that the first party opened the door for the second party to offer evidence in response, in keeping with the interest of fairness.

**CRIMINAL LAW > REVIEW**
  **SCOPE OF REVIEW IN GENERAL**
  **COMPETENCY IN GENERAL**
  **EVIDENCE ADMISSIBLE BY REASON OF ADMISSION**
  **OF SIMILAR EVIDENCE OF ADVERSE PARTY**

We agree with the juvenile court and the State that, as a matter of law, defense counsel opened the door, permitting the State to introduce rebuttal evidence in response to questioning about victim's out of context statements, in order to assess to what degree the victim's trouble answering questions was a fair characterization.

Circuit Court for Charles County
Case No. C-08-JV-18-000081

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2461

September Term, 2018

_____

In Re: J.H.

_____

*Wright,
Reed,
Sharer, J. F.
      (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Reed, J.

_____

Filed: April 29, 2020

* Wright, Alexander J., now retired, participated in the hearing of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the preparation of this opinion.

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

A juvenile petition was filed in the Circuit Court for Charles County, sitting as a juvenile court, charging J.H. (hereinafter "Appellant") with a second-degree sexual offense and assault in the second degree. After an adjudicatory hearing on August 1, 2018, the juvenile court found the Appellant involved in committing delinquent acts as to both counts, and placed Appellant on supervised probation. This appeal followed, wherein Appellant presents four questions for our review, which we have rephrased for clarity:[1]

I.    Did the juvenile court err when it overruled Appellant's exceptions to the State's failure to respond to a demand for a bill of particulars?

II.   Was the evidence legally sufficient to sustain the juvenile court's findings of delinquency pertaining to the act of sexual offense in the second degree?

III.  Did the juvenile court err when it admitted the statements of the victim's[2] mother and social worker?

IV.   Did the juvenile court err when it admitted excerpts of the recorded interview?

---

[1]    Appellant presents the following questions:

1. Did the juvenile court err by overruling appellant's exceptions to the State's failure to respond to a demand for a bill of particulars?

2. Is the evidence insufficient to sustain the juvenile court's finding of appellant's involvement in the delinquent act of sexual offense in the second degree?

3. Did the juvenile court err by admitting inadmissible hearsay?

4. Did the juvenile court err by admitting excerpts of the recorded interview with the forensic social worker as substantive evidence?

[2]    To respect and protect the privacy of the child involved in this matter, she will be referred to as "the victim."

For the reasons explained below, we affirm in part and reverse in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

*The Alleged Sexual Assault*

Throughout the summer of 2017, the victim was dropped off at her grandmother's house for babysitting. In addition to the victim's grandmother, Appellant, his sister and his father also lived in this house. A couple of weeks during this summer, the victim stayed at her grandmother's house Monday through Friday. There were also some Saturdays that the victim spent the night at her grandmother's home. At the time of these stays, the victim was seven years old, and Appellant was seventeen years old.

While the record is unclear, at some point between July 21st and mid-August of 2017, the victim's mother recognized that she (the victim) did not want to go to her grandmother's house, but she wouldn't say why. When the mother pressed the victim about why, she would just cry. The mother eventually got a new babysitter, and three days later, on or about August 21, 2017, the victim informed her mother that Appellant "had inappropriate contact with her" at her grandmother's home. The victim stated that the contact occurred on a Saturday, when the victim had stayed overnight. The victim's mother testified that the victim had last stayed at her grandparents' house on a Saturday on either July 21 or July 28.

The same day, the mother took the victim to the hospital "to see if she had gotten pregnant." At the hospital, the victim stated that her "vagina . . . was hurting a lot." When asked, "What did [Appellant] do that made you have to go to the hospital," the victim later testified, "[h]e put his thing inside me." The victim's mother then called the police. On

2

August 23, 2017, the victim was interviewed by forensic social worker Kara Finamore ("Ms. Finamore"), an employee of the Charles County Department of Social Services. During this interview, the victim informed Ms. Finamore that "Appellant and Appellant's sister sexually assaulted her 'the last time that she went [to her Aunt's[3] home], which was a few days prior' to the interview." The victim was examined at the Charles Regional Medical Center on August 31, 2017, by forensic nurse examiner Christine Martin ("Ms. Martin"). During the examination, Ms. Martin noticed "a [pea size] partially healed tear" in the victim's perineum, which "is the area between the vagina and the rectum," but "no trauma to the hymen."

On April 25, 2018, a delinquency petition was filed in the circuit court, charging Appellant with second-degree sex offense and second-degree assault. On June 28, 2018, the State amended the charge of second-degree sexual offense, substituting vaginal intercourse with "genital penetration with penis." Appellant then filed a bill of particulars, requesting more detail regarding the "genital area that was purportedly penetrated." The State responded that "the genital area" would include "the entire female genitalia area, including the anal area."

***The Adjudication Hearing***

At the adjudicatory hearing held on August 1, 2018, the State presented testimony from the victim, the victim's mother, Ms. Finamore and Ms. Martin. The victim testified that "one week ago," Appellant put "his penis inside [her]," while they were in his room.

---

[3]    The victim refers to her grandmother's home as "her Aunt's [home]."

The victim stated that she went to the hospital because her "vagina . . . was hurting a lot." The victim was asked, "What did [Appellant] do that made you have to go to the hospital," to which she responded, "[h]e put his thing inside of me." On cross-examination, the victim admitted that her mother assisted her with words like "penis" and "vagina." victim could not remember whether she or Appellant were clothed when the contact occurred. She testified that no one else was present, and she "could not remember what it felt like."

The victim's mother testified about how she came to know about the sexual assault and the subsequent actions she took, as outlined above, as well as her relationships with Appellant, Appellant's sister and the victim's grandmother. Ms. Finamore testified that the victim informed her that Appellant and Appellant's sister sexually assaulted her "the last time she went [to her aunt's home], which was a few days prior" to the interview.

On August 3, 2018, Ms. Martin, admitted as an expert in forensic nurse examination and evaluation, testified that the "partially healed" "[pea size] tear" to the victim's "perineum" indicated "some sort of trauma." She described that the perineum is the "posterior fourchette," i.e., "the area between the vagina and the rectum." While Ms. Martin "could not state when the trauma may have occurred . . . or what caused the trauma," when pressed by the State, she testified "I would say, within the last month it had happened," since the tear was "granulated" and was "starting to heal." However, Ms. Martin did note that the victim's vaginal area and perineum was "red and irritated," and that the trauma was in the genital area. She pointed out that the rectum was intact, but was close to the tear, and the victim almost had a "rectal tear." Ms. Martin further indicated that the perineum would be included in the "vaginal genital area."

4

The Appellant's only witness was his father, who testified that the victim was never left in the house without he or the victim's grandmother being present. Appellant's father also testified that Appellant was never alone with the victim. Finding that the victim was in fact sexually abused, the juvenile court concluded that Appellant was involved in the delinquent act of second-degree sex offense and second-degree assault and placed him on supervised probation. This timely appeal followed.

## DISCUSSION

### I. Bill of Particulars

#### A. Parties' Contentions

Appellant argues that the State's amended charging document did not specify the genital area that the State intended to prove was penetrated by Appellant's penis, according to a demand for bill of particulars. Appellant maintains that because the State did not sufficiently respond to the demand, the juvenile court should have accepted the Appellant's filed exceptions, dismissing the count of second-degree sex offense. The State submits that a demand for a bill of particulars is not available in juvenile proceedings. The State contends that even if Appellant could have demanded a bill of particulars, Appellant did not timely file an exception, and would not be entitled to relief. The State further claims that even if the juvenile court accepted the untimely filed exception, dismissal would not have been the proper sanction.

#### B. Standard of Review

"'Generally,' whether to grant or refuse a demand for a bill of particulars is within the trial court's discretion, in addition to 'the determination of whether the particulars provided

were legally sufficient.'" *Martin v. State*, 218 Md. App. 1, 30 (2014) (quoting *Dzikowski v. State*, 436 Md. 430, 446-47 (2013)) Therefore, the juvenile court's decision to overrule Appellant's exceptions to the State's failure to respond to a bill of particulars is reviewed for abuse of discretion.

### C. Analysis

A bill of particulars, while not clearly established by Maryland canon, can be defined as "a formal written statement by the prosecutor providing details of the charges against the defendant. Its functions are to give the defendant notice of the essential facts supporting the crimes alleged in the indictment or information, and also to avoid prejudicial surprise to the defense at trial." *Dzikowski*, 436 Md. at 446 (citing 1 Charles Alan Wright et al., Fed. Prac. & Proc. Crim. § 130 (4th ed., April 2012 Update)). As such, a bill of particulars is only applicable in criminal proceedings. The purpose of this type of demand is to ensure that the accused is well informed regarding the scope of proof that the State will be offering to prove its case against the accused. *Dzikowski*, 436 Md. at 447. However, "it is not to be used as an instrument to require the State 'to elect a theory upon which it intends to proceed.'" *Id*. (internal citations omitted). Furthermore, it is within the discretion of the trial court to determine if a defendant is entitled to a bill of particulars. *See Fraidin v. State*, 85 Md. App. 231, 270 (1991).

A bill of particulars is most relevant in proceedings where the defendant is charged by a short form indictment. As a supplement to an otherwise sufficient indictment, it "is designed to provide the defendant with information with which he would have been supplied had he been indicted using the standard indictment, which constitutes notice that

is constitutionally required to be given in order to apprise the defendant of the crime with which he is accused." *Dzikowski*, 436 Md. at 448.

Juvenile petitions are governed by Md. Rule 11-803, as promulgated by Md. Code. Ann., Cts. and Jud. Proc. ("CJ") § 3-8A-13(a)[4], which provides, in part, that the petition must state "[t]he facts, in clear and simple language, on which the allegations are based. If the commission of one or more delinquent acts or crimes is alleged, the petition shall specify the laws allegedly violated by the respondent." Md. Rule 11-803(a)(2)(c). This Court, along with the Court of Appeals, has traditionally held that juvenile proceedings are civil in nature, and do not constitute criminal proceedings. *See In re Anthony R*., 362 Md. 51, 69, (2002); *In re Victor B*., 336 Md. 85, 91 (1994), *In re Areal B.,* 177 Md. App. 708, 714, (2007). Even so, juveniles charged with delinquent acts are afforded the same constitutional protections as defendants charged criminally, pursuant to the Fourteenth Amendment. *In re Roneika S*., 173 Md. App. 577, 587 (2007).

In evaluating the sufficiency of a juvenile petition and whether notice requirements as mandated by the Constitution are met, this Court does not "read CJ § 3–8A–13(a) and Rule 11–103(a)(2)(c) as requiring greater factual specificity than is required by the Fourteenth Amendment or Article 21 . . . [n]or do we believe that the statute and rule require more than does a criminal charging document." *In re Roneika S*., 173 Md. App. 577 at 600. In the instance that a juvenile believes that the charging petition is insufficient to advise them of the factual situation upon which they are accused, additional factual detail

---

[4]     Also known as the Juvenile Causes Act.

7

can be supplied "through other means," so long as "the essential elements of the charged offense have been identified." *Id.* at 600-601.

In any case, given that juvenile proceedings are governed by the Maryland Rules, which make no mention of a juvenile being permitted to avail themselves to the remedy of an alleged deficient petition through a demand for a bill of particulars, we accept the State's argument that Appellant was not entitled to a demand for a bill of particulars in the juvenile proceeding. The juvenile court was under no obligation to mandate that the State provide Appellant with a bill of particulars, and therefore the juvenile court did not abuse its discretion in overruling Appellant's exceptions regarding the same. However, we will now turn our attention to whether the juvenile petition stated in "clear and simple language the alleged facts which constitute the delinquency," as required by CJ § 3–8A–13(a) and Rule 11–103(a)(2)(c).

On April 25, 2018, the juvenile petition was filed, alleging that Appellant committed second-degree sex offense (age-based) and second-degree assault. At the time the petition was originally filed, the sexual act listed was "vaginal intercourse," in tandem with the incident report which stated that the victim alleged that the Appellant put "his thing" "inside of her." On June 28, 2018, the State moved to amend the second-degree sex offense as charged because "as it stood, the petition 'more or less' included 'an allegation of rape, worded as a second-degree sexual offense.'" The State substituted "vaginal intercourse" with "genital penetration," to which Appellant objected, arguing that "genital penetration" was "overly broad" and that the "genital area" to have been penetrated was not clear. The

State responded to Appellant's objection, clarifying that the genital area included the vaginal and anal *areas*.

We believe that this clarification more than satisfies Md. Rule 11–103(a)(2)(c) requirement for "clear and simple language" regarding the allegations on which the petition is based. Even at the hearing on August 1, 2018, when Appellant continued to question the genital area they were alleging was "penetrated" the State stated:

> [SAO Attorney]: "He keeps putting his thing in and doing this." As she touched her vaginal area with her hand. . . A further interview with [the victim] indicated [Appellant] . . . put his think [sic] inside her. She describes it hurts when he does it. She described his thing and pointed to her vaginal area.
>
> ****
>
> [OPD Attorney]: And, Your Honor, once again, I am just going to ask, which genital opening are we referring to? I still haven't been informed?
>
> ****
>
> [The Court]: The genital area, which could include the vaginal area, the vagina, the anus, however slight, penetration.
>
> [SAO Attorney]: Yes, Exactly.
>
> [The Court]: Either, both, or one or the other. So, that's . . . you have been on notice of this. We're not going to parse this further.

We do not overlook Appellant's next argument that the perineum is not a genital opening for the purposes of a sexual offense in the second-degree charge, as discussed *infra*. However, in respect to whether the petition stated in "clear simple language the facts that constituted the delinquency," i.e., that the genital area included the vaginal and anal area, where the perineum is located, we hold that the petition was sufficient.

9

## II. Second-Degree Sexual Offense

### A. Parties' Contentions

Appellant contends that the evidence was insufficient to sustain the juvenile court's finding of Appellant's involvement in a sexual offense in the second degree, because the State did not prove that Appellant penetrated the victim's genital opening. Specifically, Appellant submits that the facts and the court's finding constitute attempted second-degree rape or sexual offense in the third degree. The State rebuts, noting that its proof established that Appellant penetrated a genital opening other than the victim's vagina, the perineum.

### B. Standard of Review

In determining whether the evidence was sufficient to show that a juvenile has committed a delinquent act, we utilize the same standard of review that applies in criminal cases: "whether the evidence, adduced either directly or by rational inference, enabled the trier of fact to be convinced beyond a reasonable doubt that the [A]ppellant committed the act." *In re George V.*, 87 Md. App. 188, 193 (1991) (citing *In re: Appeal No. 101*, 34 Md. App. 1 (1976)). Appellate courts have no responsibility in "resolv[ing] conflicting evidentiary inferences;" we give great deference to the fact finder, as they have the best "opportunity to assess the credibility of the witnesses, weigh the evidence and resolve conflicts in the evidence…." *Neal v. State*, 191 Md. App. 297, 314 (2010) (quoting *Sparkman v. State*, 184 Md. App. 716, 740 (2009), *cert. denied*, 410 Md. 166 (2009)). But if our review of the sufficiency of the evidence "involves an interpretation and application of Maryland statutory and case law, [this Court] must determine whether the lower court's

conclusions are legally correct under a *de novo* standard of review." *Rodriguez v. State*,

221 Md. App. 26, 35 (2015) (internal quotations and citations omitted).

### C. Analysis

Md. Code Ann. Crim. Law ("CR") § 3-306 provides that:

> (a) [a] person many not engage in vaginal intercourse or a sexual act with another
>> (3) if the victim is under the age of 14 years, and the person performing the act is at least 4 years older than the victim.

CR § 3-306(a)(3) (2012 Repl. Vol., 2016 Supp.).[5] A "sexual act" as outlined by CR § 3-301(d)(1) states:

> (d)(1) "Sexual act" means any of the following acts, regardless of whether semen is emitted:
>> (i) analingus;
>> (ii) cunnilingus;
>> (iii) fellatio;
>> (iv) anal intercourse, including penetration, however slight, of the anus; or
>> (v) an act:
>>> 1. in which an object or part of an *individual's body penetrates, however slightly, into another individual's genital opening* or anus; and
>>> 2. that can reasonably be construed to be for sexual arousal or gratification, or for the abuse of either party.

(emphasis added). CR § 3-301(d)(2) indicates that a "sexual act" does not include "vaginal

intercourse," which is defined as "genital copulation, whether or not semen is emitted,"

---

[5] Effective October 1, 2017, the General Assembly repealed the first and second-degree "sexual offense" crimes, reclassifying those as first and second-degree rape crimes, pursuant to Acts 2017, Chapter 161 & 162 (SB0944 and HB 0647). While second-degree rape embodies the former crime of sexual offense in the second degree, the offenses alleged in this case predate the amendment. Therefore, for this opinion, we will refer to the charge as sexual offense in the second degree. *See also* CL § 3-304 (2012 Repl. Vol., 2018 Supp.). Additionally, in accordance with the statute as it was written before the amendment, any reference to the Criminal Law Article are to the 2016 Supplement to the 2012 Replacement volume, unless otherwise stated.

including "penetration, however slight, of the vagina." CR § 3-301(g)(1)-(2). As emphasized above, the point of contention between the parties is whether the State presented sufficient evidence for the juvenile court to conclude that Appellant "penetrate[d], however slight" the victim's "genital opening," with a particular focus on whether the "perineum" is a "genital opening" for the purposes of a second-degree sexual offense charge.

The expression "genital opening" is defined neither by case law nor statute in Maryland. The Court of Appeals has explicitly framed the procedure utilized by appellate courts when interpreting ambiguities in statutes, declaring:

> In construing a statute, we look first to the plain language of the statute, and if that language is clear and unambiguous, we look no further than the text of the statute. A plain reading of the statute assumes none of its language is superfluous or nugatory. We neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning. We have often stated that if the language of the statute is not ambiguous, either inherently or by references to other relevant laws or circumstances, our inquiry as to legislative intent ends. If the meaning of the plain language is ambiguous or unclear, to discern legislative intent, we look to the legislative history, prior case law, the purposes upon which the statutory framework was based, and the statute as a whole.

*Bible v. State*, 411 Md. 138, 152–53 (2009) (quoting *Bost v. State*, 406 Md. 341-350 (2008)) (internal quotation marks and citations omitted). When examining the language of the statute, "[t]he language of the statute itself is the primary source of [legislative] intent; and the words used are to be given their ordinary and popularly understood meaning, absent a manifest contrary legislative intention." *Williams v. State*, 329 Md. 1, 15 (1992) (quotation marks and citation omitted). We also consider statutes from other jurisdictions

12

to determine if "their treatment of [certain] statutory provisions [are] analogous to those in Maryland law." *Bible*, 411 Md. at 153; *see also Stachowski v. Sysco Food Servs. of Baltimore, Inc.,* 402 Md. 506, 528–531 (2007).

In 1976, the Maryland General Assembly repealed the common law crimes of rape and sodomy, creating a new and distinct subtitle in Article 27 entitled, "Sexual Offenses." Legislative Bill File, S.B. 358, at 1 (1976). Through this new structure, "the crime of commission of a sexual offense [was] trifurcated into degrees, the determination of which [was] dependent upon the presence or absence of numerous delineated factors of aggravation." Legislative Bill File, S.B. 358, at 1. Additionally, "certain germane phrases" were "defined with specificity, i.e. mentally defective, mentally incapacitated, physically helpless, sexual act and sexual conduct." *Id.* at 1. Nevertheless, in redefining "sexual act" to include "intrusion of foreign objects into the genital or anal openings," the legislature did not designate a particular meaning to the words "genital" or "opening." Legislative Bill File, S.B. 358, at 6.

In the absence of a discernable legislative intent regarding a specified meaning of the aforementioned words, we must turn to their "ordinary and popularly understood meaning." *Williams*, 329 Md. at 15. Appellant urges us to consider the common understanding of "genitals" and "opening," as they are explained in a dictionary. The State, on the contrary, believes that the statutes of other states "are more on point and useful." We will apply both the medical and common definitions of these words and construe them against the medical definition of "perineum," as well as make jurisdictional comparisons,

13

in order to determine whether the apparently complex phrase "genital opening" encompasses the perineum.

The female genitalia, as outlined in Taber's Cyclopedic Medical Dictionary, is defined as the "[r]eproductive organs of the female sex." Female Genitalia, *Taber's Cyclopedic Medical Dictionary,* at 941 (21st ed. 2009). The definition goes on to explain that "the external genitalia collectively are termed the vulva or pudendum and includes the mons veneris, labia majora, labia minora, clitoris, fourchette, fossa navicularis, vestibule, vestibular bulb, Skene's glands, gland of Bartholin, hymen and vaginal introitus and perineum," while the internal genitalia includes "the two ovaries, the two fallopian tubes, uterus and vagina." *Id.* at 941. We utilize the common usage definition of "opening" provided by Appellant, defined in pertinent part as "becoming open or causing to be open; in a state which permits access, entrance or exit; not closed, covered, clogged, or shut." Opening, *New World Dictionary*, at 995-996 (2d ed. 1974). The perineum is medically described as "[t]he external region between the vulva and anus in a female or between the scrotum and anus in a male. It is made up of skin, muscle and fasciae." Perineum, *Taber's Cyclopedic Medical Dictionary,* at 1749 (21st ed. 2009). In discussing tears in the perineum, *Taber's* indicates that there are four degrees of severity, usually caused by delivery:

> A first-degree tear involves superficial tissues of the perineum and vaginal mucosa but does not injure the muscular tissue. A second-degree tear involves those tissues included in a first-degree tear and the muscles of the perineum but not the muscles of the anal sphincter. A third-degree tear involves all the tissues of the second-degree tear and the muscles of the anal sphincter. A fourth-degree tear extends completely through the perineal skin, vaginal mucosa, perineal body, anal sphincter muscles and the rectal mucosa.

14

*Id.* at 1749.

The State directs our attention to two statutes in New Hampshire and Mississippi that support its contention that the perineum is a genital opening. In title LXII of New Hampshire's criminal code, they define "genital opening" as "the internal or external genitalia including, but not limited to, the vagina, labia majora, labia minora, vulva, urethra or perineum." N.H. Rev. Stat. Ann. § 632-A:1(I-b). In the context of penetrating a "genital opening," the New Hampshire statute defines "sexual penetration" as:

> (1) Sexual intercourse; or
> (2) Cunnilingus; or
> (3) Fellatio; or
> (4) Anal intercourse; or
> (5) Any intrusion, however slight, of any part of the actor's body, including emissions, or any object manipulated by the actor into genital or anal openings of the victim's body; or
> (6) Any intrusion, however slight, of any part of the victim's body, including emissions, or any object manipulated by the victim into the oral, genital, or anal openings of the actor's body[.]

N.H. Rev. Stat. Ann. § 632-A:1(V). We distinguish New Hampshire's statute from Maryland's, in that our sexual crimes definition under CR § 3-301(d)(2) explicitly excludes "vaginal intercourse" from the description of a sexual act. Moreover, outside of identifying the perineum as part of the definition for "sexual penetration," no New Hampshire case law, reported and unreported, further applies the New Hampshire statute in finding that a victim's perineum was in fact penetrated. *See State v. Guay*, 162 N.H. 375, 383 (2011); *State v. Flynn*, 151 N.H. 378, 383 (2004); *State v. Boisvert*, No. 2015-0392, 2016 WL 3940144, at *1 (N.H. July 8, 2016); *State v. Nolan*, No. 2015-0209, 2016 WL 3475707, at *3 (N.H. Mar. 17, 2016).

15

In Maryland, there is also an absence of case law discussing the perineum, much less whether it can be penetrated, beyond (1) describing medical examinations done around or about the perineum, (2) explaining it, for the purposes of defining the female genital area, (3) or referencing it as part of injuries sustained during a sexual assault involving vaginal intercourse. *See generally Martinez ex rel. Fielding v. The John Hopkins Hosp.*, 212 Md. App. 634, 641 (2013) (in a torts negligence case, "the perineum [was] cut in order to enlarge the vaginal opening."); *Silberstein v. Massachusetts Mut. Life Ins. Co.*, 189 Md. 182, 189 (1947) (regarding cancellation of insurance policies, the decedent was "treated for a growth in the perineum."); *Kackley v. State*, 63 Md. App. 532, 537 (1985) (citing *Williams Obstetrics*, 16th Ed., Pritchard-McDonald (1980)) (describing the perineum as "the area bounded by the mons in front, the buttocks behind and the thighs laterally[,]"); *Barber v. State*, 231 Md. App, 490, 502 (2017) (directly quoting *Kackley v. State's* discussion regarding the definition of the perineum); *White v. State*, 13 Md. App. 1, 3 (1971) (during a homicide investigation, it was noted that "[t]here were no lacerations or hemorrhages of the perineum . . . ."); *Thomas v. State*, 206 Md. 575, 579 (1955) (in reference to the rape and murder of a store owner, the medical examiner found that "[t]here were extensive lacerations and contusions of perineum, vagina and rectum.").

While Mississippi does not define "genital opening," their statute references the perineum in the context of the "Statutory Rape; Forcible Sexual Intercourse; Sexual Assault Protection Orders" section of their criminal code. Miss. Code. Ann. § 97-3-65 states that "[i]n all cases where a victim is under the age of sixteen (16) years, it shall not be necessary to prove penetration where it is shown the genitals, anus or *perineum* of the

16

child have been *lacerated* or *torn* in the attempt to have sexual intercourse with the child."

Miss. Code. Ann. § 97-3-65(5) (emphasis added). The statute also directs that:

> For the purposes of this section, "sexual intercourse" shall mean a joining of the sexual organs of a male and female human being in which the penis of the male is inserted into the vagina of the female or the *penetration* of the sexual organs of a male or female human being in which the penis or an object is *inserted* into the genitals, anus or *perineum* of a male or female.

Miss. Code. Ann. § 97-3-65(7) (emphasis added). Subsection (5) of Miss. Code. Ann. § 97-3-65 alludes to the notion that the perineum can be "lacerated" or "torn," serving as a substitute for proof of penetration, while subsection (7) insinuates that a "penis" or an "object" can be "inserted" into the perineum. The State contends that this indicates that Mississippi recognizes that the perineum is "capable of being penetrated." Turning to Mississippi's case law to examine how their statute has been applied, reference to the perineum concerns either (1) vaginal injuries sustained by a victim during a sexual assault, *See e.g., Moffett v. State*, 49 So. 3d 1073, 1102 (Miss. 2010) ("several anatomical structures (vagina, vulva, perineum, anus, rectum) were torn completely through, making one opening."); *Renfrow v. State*, 882 So. 2d 800, 803 (Miss. Ct. App. 2004) (". . . an obstetrician . . . determined that the child had extensive damage to her vagina, pelvic peritoneum, and rectum."); *Pittman v. State*, 836 So. 2d 779, 782 (Miss. Ct. App. 2002) ("The doctor noticed lesions on her perineum and an anal tear."); or (2) mere citation of Miss. Code. Ann. § 97-3-65(5), (7), without any injury or reference to the perineum in the facts. *See e.g., Taylor v. State*, 122 So. 3d 742, 746 (Miss. Ct. App. 2011), *aff'd*, 122 So. 3d 707 (Miss. 2013); *Branch v. State*, 998 So. 2d 411, 417 (Miss. 2008); *McDaniel v. State*, 790 So. 2d 244, 246 (Miss. Ct. App. 2001).

17

We differentiate between the State's argument that Miss. Code. Ann. § 97-3-65(7) endorses the point that the perineum is "capable of being penetrated" and whether the perineum is a *genital opening* for the purpose of penetration, as required by Maryland's CR § 3-301(d)(1). Mississippi does not possess any case canon on whether the perineum is or can be considered a *genital opening* for the purposes of penetration by "an object or part of an individual's body," as would be necessary pursuant to the Maryland statute.

In surveying statutes from states other than New Hampshire and Mississippi, none statutorily define "genital opening," as New Hampshire has. However, some states do outline what "genital opening" entails. In their jury instructions on "sexual penetration," Hawaii has defined "genital opening" to "include[] the anterior surface of the vulva or labia majora[.]" H.I. Crim. Jury Instr. 9.00. In *State v. Albert*, the Supreme Court of Connecticut held that the "opening between the folds, i.e., labia majora, is the genital opening, and the labia majora form the boundaries of the genital opening for purposes of [their] statute defining 'sexual intercourse' as vaginal intercourse." *State v. Albert*, 252 Conn. 795, 809 (2000). In Michigan, through evidence of penetration of the "labia majora," the state's Court of Appeals held that the victim's "genital opening" had been penetrated for the purpose of the statutory definition of "sexual penetration." *People v. Bristol*, 115 Mich. App. 236, 238 (1981). California's intermediary court has also explained that the female's genital "opening" includes the labia majora, and penetration of such is sufficient for their rape statute. *See People v. Quintana,* 89 Cal. App. 4th 1362, 1366 (2001).

Absent any mention of the perineum in jurisdictions that define genital opening in some form or fashion, save one, we decline to define the perineum as a genital opening. In

18

also considering the medical definition of perineum and the common understanding of "opening," we acknowledge that the perineum does not have an "entrance or exit." While it can be "lacerated" or "torn," as it was in this case, it does not permit access to anything. In contrast, the labia (majora and minora) along with the vulva form the "opening" of the vaginal genital area, while the anus serves as the "entrance" to the rectum. Thus, while we agree with the State that the perineum is capable of being penetrated, as any flesh is capable of being pierced, we do not agree with the argument that the perineum is a *genital opening* for the purposes of penetration, as outlined in CR § 3-301(d)(1).

When the juvenile court made its finding that the Appellant was involved in a second-degree sex offense, it found that there was "unlawful penetration" to the "beginning of the opening to the vagina, although the vagina, itself, there was no evidence that that was penetrated." Alternatively, the State asserts that the juvenile court made a "reasonable inference" that Appellant "thrust" his penis into the victim's perineum (and not her vagina) with such force that he penetrated it. Either way, the State's position is defeated. If we were to agree with the State that the juvenile court did not make a finding of penetration to the vagina, but to the perineum, then the State's argument is frustrated because we do not find the perineum to be a genital opening for the purposes of penetration. If we disagree with the State and determine that the juvenile court found that there was penetration to the vagina, then the State's point fails because that finding would be consistent with the definition of vaginal intercourse as defined in CR § 3-301(g)(2), which is expressly excluded from the classification of a sexual act, pursuant to CR § 3-306.

19

We do not diminish the clear evidence that there has been some sexual contact, evidenced by the healing tear in the victim's perineum. Still, the evidence presented in reference to that contact was insufficient for a rational fact finder to conclude beyond a reasonable doubt that Appellant' conduct satisfied the requirements of CR § 3-306. For this reason and those discussed at length above, we reverse the juvenile court's finding of second-degree sex offense. We will now address the remaining arguments raised by Appellant.

### III. Inadmissible Hearsay

### A. Parties' Contentions

Appellant argues that the juvenile court erred in allowing the victim's mother and Ms. Finamore to testify under the prompt report of sexual assault hearsay exception because the victim's testimony was not consistent with her out-of-court statements. Particularly, Appellant argues that the victim's testimony regarding the date that Appellant committed the sexual assault was different from what she told her mother. The State maintains that the juvenile court properly admitted the victim's prior statements and her mother's testimony was offered for a non-hearsay purpose, or in the alternative, the mother's and Ms. Finamore's statements were admissible under the prompt complaint exception to the hearsay rule.

### B. Standard of Review

We review a trial judge's determination on the admissibility of certain evidence for abuse of discretion. *Lopez v. State*, 458 Md. 164, 180 (2018) (citing *Gordon v. State*, 431 Md. 527, 533 (2013)). In reference to hearsay, a trial court is prohibited from admitting it

20

if there is no basis for its admissibility. *Gordon*, 431 Md. at 536. Consequently, "[w]hen the evidentiary determination also involves a question of law, such as whether the evidence is relevant or constitutes hearsay under Maryland statutes, that legal issue is reviewed *de novo*." *Lopez,* 458 Md at 180. Any factual findings made by the trial court are reviewed for clear error. *Gordon*, 431 Md. at 538.

## C. Analysis

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Md. Rule 5-801. Because of its "inherent untrustworthiness," hearsay is generally inadmissible, unless it falls within a subset of recognized exceptions by way of constitutional provision, statute, rule, or "bear[s] particularized guarantees of trustworthiness." *Marquardt v. State*, 164 Md. App. 95, 123 (2005) (quoting *Ohio v. Roberts*, 448 U.S. 56, 66 (1980)); *See also Parker v. State*, 156 Md. App. 252, 259 (2004); Md. Rule 5–802. Whether an out-of-court statement constitutes hearsay is centered on the purpose for which the statement is being offered at trial. *Hardison v. State*, 118 Md. App. 225, 234 (1997). If the statement is being offered "substantively," that is, to prove the truth of the matter, then it is hearsay, and an exception is needed to endorse its admissibility. *Id.* If the statement is offered "for a purpose other than to prove its truth," then it's not hearsay at all. *Id*.

One of the numerous ways that a statement can be admissible as non-hearsay is if it is offered "for the purpose of showing that a person relied and acted upon the statement, rather than for the purpose of showing that the facts elicited in the statement are true."

21

*Morales v. State*, 219 Md. App. 1, 11 (2014) (citing *Purvis v. State*, 27 Md. App. 713, 716 (1975)). The victim testified that a "long time ago," she went to the hospital "for [her] vagina" because "it was hurting a lot." The victim stated that her mother was the only person she told about the incident before she went to the hospital. During the direct examination of the victim's mother, the State asked, "[W]hy did she tell you that she didn't want to go to the house where [Appellant] lived?" When the defense counsel objected, the State explained that it planned to follow the mother's testimony regarding the victim's disclosure by asking whether she took the victim to the hospital, in order to "create" a "timeline." The State further argued that it was not offering the prior statements for the truth of the matter asserted, i.e., to prove that Appellant committed a sexual assault against the victim, but to establish the reason the victim's mother took the victim to the hospital. The juvenile court subsequently allowed the mother to testify that the child made the allegations after she expressed that she did not want to go to her grandmother's home anymore, in July of 2017, which prompted her (the mother) to take the victim to the hospital. We find no implication of hearsay here, as the mother's statements were offered for a purpose other than to assert the truth of its contents. Accordingly, the juvenile court did not abuse its discretion in admitting the mother's statements, and we need not discuss whether the mother's statements regarding the hospital visit were admitted for a hearsay purpose.

***Prompt Complaint Hearsay Exception***

Md. Rule 5-802.1(d) outlines a hearsay exception that stipulates:

The following statements previously made by a witness who testifies at the trial or hearing and who is subject to cross-examination concerning the statement are not excluded by the hearsay rule:

****

(d) A statement that is one of prompt complaint of sexually assaultive behavior to which the declarant was subjected if the statement is consistent with the declarant's testimony.

This exemption is grounded in "the long-recognized Maryland common law hearsay exception for a victim's timely complaint of a sexual assault." *Muhammad v. State*, 223 Md. App. 255, 266 (2015) (citation omitted). Despite the traditionally held purpose of this rule, which was to dispute "adverse inferences" about a woman's delay in reporting sexual assaults in the 1880's, we established in *Parker* that "the purpose of the exception in Maryland is to corroborate the victim's testimony, and not simply to combat stereotypes held by jurors regarding nonreporting victims." *Parker,* 156 Md. App. at 267 (internal citations omitted); *see also Muhammad*, 223 Md. App. at 266. By way of this hearsay concession, the State is prohibited from presenting a "narrative of the complaint," but can introduce, "in its case-in-chief, the basics of a complaint, i.e., the time, date, and identity of the perpetrator." *Muhammad*, 223 Md. App at 268. Therefore, in order for a prompt complaint to be admissible, "it has to 'concur with the indictment in the unities of time, place, act, and actor.'" *Id*. (quoting *Green v. State*, 161 Md. 75, 80 (1931)).

On appeal, Appellant's sole argument as to why the mother's statements, along with Ms. Finamore's statements, about when the victim told them the sexual assault took place are not admissible under the prompt report of sexual assault hearsay exception is that the child's trial testimony was not consistent in respect to the date in which Appellant

committed the sexual assault. During the trial, when the victim was asked about the timing of the sexual assault, the victim testified, "I only remember it was one week ago." However, when then questioned about going to the hospital, the victim responded that "a long time ago," she went to the hospital "for her vagina" because "it was hurting a lot." The victim attributed the pain to Appellant putting "his thing" inside her vagina. The mother testified that the victim informed her that there had been "inappropriate or sexual contact" on "a Saturday, the time she had stayed all night." The mother further testified that the victim had stayed on a Saturday three or four times, and the last time she had stayed at her grandparents' house would have been on July 21st or July 28th of 2017. After the defense's objection regarding inconsistency, the juvenile court found that the victim's testimony and her prior statement to her mom "was consistent in some degree," and that "kids don't know when … they don't have the concept of time that we do, and they get caught up on that." In overruling defendant's objection, the juvenile court stated, "but what is, what we are more concerned with is the what, not the when."

Additionally, during Ms. Finamore's direct examination, the defense objected to the question, "During that interview, did she disclose to you that she had been sexually assaulted?" In addition to their inconsistency argument, defense counsel also advanced the argument that since the victim had already disclosed to her mother about her sexual assault, her report to Ms. Finamore was (1) no longer prompt, and (2) could have been tainted by "bias, interest, influence or incapacity", due to the "terms" that "she uses," which indicated

24

that her "mom told her what to say."[6] Finding the prompt complaint exception to the hearsay rule applicable, the juvenile court overruled the objection.

Our decision in *Nelson v. State* is quite dispositive of this issue:

We hold that the required consistency between the declarant's "statement ... of prompt complaint" and "the declarant's testimony" contemplates a substantive consistency between 1) the content itself of the out-of-court statement and 2) the content of the trial testimony. Are the two stories themselves compatible? The concern is not with whether the victim can now, as a witness, accurately recall the details of precisely when and where and to whom her earlier declaration was made. It is the hearsay auditor [] who must, on the witness stand, vouch for those circumstances. The required consistency is between 1) the story told by the victim on the witness stand and 2) the story heard and reported by the hearsay auditor.

It is the victim who testifies directly as to her version of the crime story. It is the hearsay auditor who testifies indirectly as to the victim's earlier version of that same story. Our focus is on whether what the victim says now is compatible with what the victim said then. Our required witness to what the victim said then is not the victim herself, but someone else who heard the victim say it. It is not required that the victim, as a witness, even recall having made the earlier out-of-court declaration, let alone recall the surrounding circumstances or the precise content of that earlier complaint. It is the hearsay auditor, not the declarant, who is the necessary witness to the actual uttering of the out-of-court declaration.

*Nelson v. State*, 137 Md. App. 402, 413–14 (2001). We do not find the victim's story substantively incompatible with that of her mother and Ms. Finamore's. At both instances in which the victim is asked about the timing of the event by someone other than her mother—first by Ms. Finamore on August 23, 2017, and then on the stand, on August 1, 2018—she gives timeframes that are close in time to when she is being asked. When questioned by Ms. Finamore about when the assault took place, the victim states that it

---

[6]    Appellant did not advance this argument on appeal, so we will not further discuss the argument's merit.

happened the last time that she went to her grandmother's house, which was "a few days prior." When asked on the stand, the victim testifies that it "it was one week ago." We do not ignore the inconsistency that the victim told her mother that the sexual assault took place "the last Saturday" that she was at her grandmother's home. Nevertheless, we see no harmful effect on the reliability of the victim's story, as the victim's report to her mother that a sexual assault had taken place was corroborated in part by Ms. Martin who testified that the trauma to the victim's perineum likely happened "within the last month" before the examination, which took place on August 31, 2017, given that the tear was "granulated" and was "starting to heal." The "content" of the victim's out of court complaint and the content of the victim's trial testimony was consistent with Md. Rule 5-802.1(d). *See also Nelson,* 37 Md. App. at 414. We respect and accept the juvenile court's understanding of children's concept of time,[7] and thus, find no substantive inconsistency in the content of the victim's out of court statement and the testimony of her mother and Ms. Finamore about her report of the sexual assault.

### IV. Recorded Excerpts

### A. Parties' Contentions

Appellant alleges that the juvenile court erred when it permitted the State to admit excerpts of the victim's recorded interview with Ms. Finamore into evidence on redirect.

---

[7]     *See also Rankin v. Evans*, 133 F.3d 1425, 1443 (11th Cir. 1998) ("young children do not have a particularly strong grasp of the concept of time, although they are able to articulate more concrete concepts such as events that have occurred or things that have happened to them.").

Appellant maintains that the juvenile court misapplied the "opening the door" doctrine and the doctrine of completeness by permitting the State to introduce into evidence challenged excerpts of the victim's statement as substantive proof. The State submits that Appellant's claim should be rejected because they failed to provide a transcription of the challenged excerpts.[8] The State asserts that even if we were to consider Appellant's argument on the merits, the juvenile court did not admit the challenged evidence under the doctrine of completeness, but under the "opening the door" doctrine. The State insists that Appellant's contention fails because defense counsel "opened the door" to the five portions of the interview during his cross examination.

## B. Standard of Review

The Court of Appeals has recently delved into the standard of review for the "opening the door" doctrine, finding that the inquiry as to whether counsel has "opened the door" is a legal one, considering that the open door doctrine is a "rule of expanded relevance." *State v. Robertson*, 463 Md. 342, 352 (2019) (quoting *Clark v. State*, 332 Md. 77, 85 (1993)). Therefore, "this Court reviews the question of whether a party opened the door to introduce rebuttal evidence *de novo*." *Id.* at 353. A trial judge's great deference in "weighing relevancy in light of unfairness or efficiency considerations" does not extend to irrelevant evidence. *Id*. at 353 (quoting *Perry v. Asphalt & Concrete Services, Inc*., 447 Md. 31, 48 (2016)).

---

[8]     On June 25, 2019, the Court of Special Appeals granted Appellant's unopposed Motion to Correct the Record with the recorded interview, including the challenged excerpts. This Court has received the recording and was able to utilize it in addressing the merits of Appellant's claim.

27

Once the door has been "opened" for the purposes of incompetent evidence, or "evidence inadmissible for reasons other than relevancy," *Clark*, 332 Md. at 87 n. 2, a second inquiry is made regarding the proportionality of the rebuttal evidence. *See Robertson*, 463 Md. at 358 ("the proportionality of the rebuttal evidence permitted by the trial judge **once the door had already been opened** . . . is a separate inquiry [under an abuse of discretion review and] . . . does not pertain to [the] standard of review for the preliminary question of whether the door has been opened for rebuttal evidence.") (emphasis in original).

## C. Analysis

### *Doctrine of Completeness*

We first accept the State's assertion that the juvenile court did not enter portions of the victim's interview under the doctrine of completeness. This doctrine is partially codified in Md. Rule 5-106, and states:

> When part or all of a writing or recorded statement is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

This rule does not replace the common law requirements for admissibility or permit the admission of precluded evidence, "except to the extent that it is necessary, in fairness, to explain what the opposing party has elicited." Md. Rule 5-106, Committee Note. In *Feigley v. Balt. Transit Co.*, Maryland's high Court outlined "three general corollaries" that define the limits of the doctrine of completeness, explaining the following:

(a) No utterance irrelevant to the issue is receivable;

28

> (b) No more of the remainder of the utterance than concerns the same subject, and is explanatory of the first part, *is receivable;*
> (c) The remainder *thus received merely* aids in the construction of the utterance as a whole *and is not in itself testimony.*

*Feigley v. Balt. Transit Co.*, 211 Md. 1, 10 (1956) (emphasis in original). In essence, the remainder to be admitted must "tend either to explain and shed light on the meaning of the part already received or to correct a prejudicially misleading impression left by the introduction of misleading evidence." *Paschall v. State*, 71 Md. App. 234, 240 (1987) (internal quotations omitted). Other boundaries also contemplate the "prejudicial character" of the remainder, which is balanced against its "explanatory value." *Richardson v. State.*, 324 Md. 611, 622-623 (1991) (citation omitted).

During the trial, after defense counsel's cross examination of Ms. Finamore, the State sought to introduce the recorded interview. Defense counsel objected and noted that the excerpts were inadmissible under Md. Rule 5-106, since they had never introduced the statement, to which the juvenile court agreed. However, after a lengthy discussion, detailed *infra*, the juvenile court found that five small excerpts from the interview were admissible under the "opening the door" doctrine as substantive evidence. When the juvenile court suggested to "listen to it in its entirety," in consideration of the rule of completeness, defense counsel declined the offer. The court then proceeded to admit five small excerpts of the victim's interview with Ms. Finamore. Accordingly, there was no implication of the doctrine of completeness. We reject Appellant's claim in this regard.

***The "Opening the Door" Doctrine***

In response to "confusion engendered by some cases and some commentators," the Court in *Clark v. State* thoroughly defined the "right to introduce evidence in response to (a) admissible evidence, or (b) inadmissible evidence admitted over objection (the doctrine of 'opening the door')." *Clark*, 332 Md. at 84. (quoting Joseph F. Murphy, Jr., *Maryland Evidence Handbook* § 106(D), at 25 (1989)). Writing for the Court, Judge Howard S. Chasanow explained that the "opening the door" principle:

> authorizes admitting evidence which otherwise would have been irrelevant in order to respond to (1) admissible evidence which generates an issue, or (2) inadmissible evidence admitted by the court over objection. Generally, "opening the door" is simply a contention that competent evidence which was previously irrelevant is now relevant through the opponent's admission of other evidence on the same issue.

*Clark*, 332 Md. 84–85. This doctrine offers relief when "one party introduces evidence that was previously irrelevant, over objection, and in doing so, makes relevant an issue in the case," permitting the trial court to determine that the first party "opened the door" for the second party to offer evidence in response, in keeping with the interest of fairness. *State v. Heath*, 464 Md. 445, 467 (2019). The principle of "opening the door" justifies the charge that "my opponent has injected an issue into the case, and I ought to be able to introduce evidence on that issue." *Clark*, 332 Md. at 85. The policy behind this rule is that it serves to "balance any unfair prejudice one party may have suffered." *Little v. Schneider*, 434 Md. 150, 163 n.6 (2013).

While the doctrine of "opening the door" has the capacity to "make relevant what was irrelevant[,]" it does not come without weakness. *Conyers*, 345 Md. 525, 546 (1997). As clarified in *Clark*, "it does not allow injecting collateral issues into a case or introducing

30

extrinsic evidence on collateral issues." *Clark*, 332 Md. at 87; *Heath*, 464 Md. at 459. Additionally, the "opening the door" precept does not outweigh the balancing of whether "inadmissible responsive evidence" is more prejudicial than probative, especially when its' evidentiary value is surpassed by its "danger of unfair prejudice, [tendency to confuse] the issues, or mislead[s] the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." *Id*; *see also* Md. Rule 5-403. We will now discuss whether the defense counsel "opened the door" for the State to offer rebuttal evidence, in addition to whether the juvenile court abused its discretion in weighing the proportionality of the excerpts.

During the cross-examination of Ms. Finamore, defense counsel asked several questions regarding the recorded interview with the victim, including:

> [OPD Attorney]: And in your general practice as, you know, an interviewer, you … your practice is to warm up the subject of the interview, right?
>
> [Ms. Finamore]: Typically.
>
> [OPD Attorney]: And you never even got to any of those warm-up questions, correct?
>
> [Ms. Finamore]: Correct.
>
> [OPD Attorney]: She started spouting information right at you, right?
>
> [Ms. Finamore]: Correct.
>
> [OPD Attorney]:Um… she told you a story right away, without you asking questions, right?

****

[OPD Attorney]: Okay, she also, in her interview, had a lot of, you know, random thoughts that she just said, right? Things that were inconsistent with your line of questioning or your discussion, right?

[Ms. Finamore]: Not that I recall.

****

[OPD Attorney]: Okay. Do you recall her telling you that she was jealous of [Appellant]?

[Ms. Finamore]: I do recall that.

[OPD Attorney]: Okay. Do you recall her talking to you about things that her mom said to her?

[Ms. Finamore]: I don't.

[OPD Attorney]: Okay, do you recall her saying that her mom told her, "That's bad for you?"

[Ms. Finamore]: Yes, I do recall that. Yes ma'am.

[OPD Attorney]: Okay.

[The Court]: What does … I don't understand the context of that. Can you back up?

****

[OPD Attorney]: Okay, now you also recall [the victim] telling you that kids at school kept being mean to her, right?

[Ms. Finamore]: Yes.

[OPD Attorney]: And when you asked her some questions about school at the end of the interview, she told you she goes to middle school, right?
[Ms. Finamore]: I believe so.

[OPD Attorney]: Okay, she also told you her mom was adopting a brother from Mexico?

[Ms. Finamore]: Correct.

32

[OPD Attorney]: Okay. And she also told you at some point, "I just like running away from him," the him referring to [Appellant], right?

[Ms. Finamore]: I don't recall the exact wording used.

Defense counsel then proceeded to "refresh her recollection," by playing a portion of the recorded interview. At the close of the defense's cross-examination of Ms. Finamore, the State conducted a re-direct and moved to admit the recording into evidence, arguing:

[SAO Attorney]: The door has been opened to the admission of this testimony by the significant discussion of the explicit details of the context of the conversation on cross-examination, substantively.

So, the State, its response is that in fairness to each of those individual statements…for example, and this is just one, but she said she would run away. That alone, well that was the last question, basically, that alone, out of context, means nothing.

So, to go into detail about many, and we're talking about cherry picking statements throughout the entire testimony, cleared opens the door to the admission of the entirety of the statement under, we'll say, 5-106, the Rule of Completeness. And… and simply through the theory of opening the door at this point.

[OPD Attorney]: And, Your Honor, I would object. I restricted all of my questions to [the victim's] demeanor throughout the interview . . . I never asked a single question about the substance of [the victim's] statement.

The State is saying that my question about demeanor open the door to substantive statements that were made throughout the interview. **If the State wants to play various parts of this interview around those statements around those statements [sic] that I asked of the demeanor, the questions I asked about, I don't mind giving him the actual time stamps**, I have those all ready.

However, the door has not been opened to the entirety of the statement coming in and most certainly the entirety of the statement coming in for substantive purposes. My questions were about [the victim's] demeanor throughout the interview and I restricted every single one of questions [sic] to her demeanor.

33

(emphasis added). After these arguments, the juvenile court stated that it would "rather let you all see if you can come to an agreement on what parts could or should be . . . come in . . . I'm going to reserve on that." The court further explained that "[b]ecause it does seem like, yea, there was a lot. So, the door has been opened, but the extent to which you want me to consider things . . . I will let you all see if you can agree, and then we don't have to do the whole time."

At the next hearing, on August 6, 2018, the State offered specific time stamps for five excerpts[9] of the victim's statements as elicited from Ms. Finamore on cross-examination, arguing that each of the suggested portions provided "context" to the victim's statements, such as:

- The victim did not just "start spouting information," but the victim's responses to questions were fair responses to Ms. Finamore's questions;

- The victim's statement that she was "jealous" was explained to mean that she was "mad" at him (Appellant);

- The victim's statement that kids at school kept being mean to her was not "non-responsive" nor does it demonstrate that she was "confused," but explains that she had changed schools but didn't like the school because kids were being mean to her;

- The victim's statement about being in middle school was not to demonstrate that she was "confused," but that her elementary school actually has the word "middle" in it (J. Middleton Elementary School); and

- That the victim's statement about her mom *adopting* a brother from Mexico was just a "complete mistake, [that] she doesn't understand" that the person coming was her 15-year old brother.

---

[9] The excerpts were time-stamped at (1) 00:00 – 03:00 (three minutes); (2) 04:42-05:01 (19 seconds); (3) 07:49-08:23 (34 seconds); (4) 15:33-16:50 (1 minute, 17 seconds); and (5) 19:14-20:08 (54 seconds).

Defense counsel rebutted, arguing that the cross-examination was just "effective," that the questions only concerned the victims' "bizarre" demeanor, and that none of the questions opened the door to any part of the recorded interview. After hearing both parties, the juvenile court found that defense counsel's questions were "not demeanor" related questions "in any way," and that defense counsel had "waived the objection to those portions that deal with what was brought out on cross-examination."

We agree with the juvenile court and the State that, as a matter of law, defense counsel "opened the door," permitting the State to introduce rebuttal evidence in response to questioning about victim's "out of context" statements, in order to assess to what degree "the victim's 'trouble' answer[ing] questions was a fair characterization." Whether the victim was "jealous," or thought she was in "middle school" does not speak to the victim's "demeanor" at all, but instead, does in fact mischaracterize whether the victim is consistent, without a better understanding of the context in which the statements were made. As pointed out by the State, even the juvenile court had to ask about the "context" of one of the questions in which defense counsel asked Ms. Finamore. Ironically, defense counsel's response to the juvenile court was to actually play a portion of the recorded interview, to put his question "in context." We find that just as defense counsel played a part of the recording to provide aid in understanding the background of the victim's statement about her mom telling her that "that's bad for you," the State playing other related portions of the interview to give contextual reference to other questions taken "out of context" was surely within the purview and application of the open door doctrine.

We acknowledge Appellant's argument that two out of the five excerpts contained substantive details regarding the victim's allegations, but otherwise find their points irrelevant. In the first excerpt, Ms. Finamore asks the victim, "what's going on," to which the child responds that Appellant keeps doing stuff to her even after she says "no." This excerpt was offered by the State to show that Ms. Finamore really did get to ask "warm-up" questions, and that the victim did not just start "spouting out" information. In the fourth excerpt, the victim explained that her body hurt and when asked if he puts "anything on it," the victim responded that he "spits on his finger and puts it on his thing." When asked whether it hurts, the victim replied, "I keep getting jealous," which the victim explained to mean that she "gets mad at [Appellant]." This excerpt was presented to describe the victim's understanding of the word "jealous," in contrast to what adults know the word to mean. We concur with the State that defense counsel's questions were "designed to attack the victim's credibility by painting her as incoherent and incapable of producing cogent responses to Ms. Finamore's question[ing]." Defense counsel's failure to fully appreciate the context of the statements he seemingly picked to criticize the victim's credibility does not defeat the fact that the statements were made in respect to her allegations and were not just "random thoughts."

We find that defense counsel did open the door to allow the State to offer rebuttal evidence. We find no abuse of discretion in the reception of the first and fourth excerpts, nor in the second, third and fifth excerpts, in order to refute the picture of the victim that defense counsel attempted to draw, as well as to provide adequate context for the statements.

36

**CONCLUSION**

We reverse the juvenile court's finding of second-degree sex offense. As to all other questions presented by Appellant, we affirm.

**FINDING OF INVOLVED IN THE CHARGE OF SECOND-DEGREE SEXUAL OFFENSE REVERSED. FINDING OF INVOLVED IN THE CHARGE OF ASSAULT IN THE SECOND DEGREE AFFIRMED. COSTS TO BE PAID 3/4 BY APPELLANT AND 1/4 BY CHARLES COUNTY. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

37

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/2461s18cn.pdf

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/2461s18cn2.pdf

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/2461s18cn3.pdf